Plaintiffs brought this action to restrain the defendants from interfering with their use of water from a well on defendants' property. The water was supplied to plaintiffs by means of a pressure system also located on defendants' property. The trial court held that plaintiffs had an easement to use the well for the purpose of obtaining water, with access thereto, but not to the use of the water system. Plaintiffs appeal from the judgment dated April 18, 1949.
In 1937 the Security Building Loan Association owned three adjoining lots in a subdivision in the town of Greenfield, Milwaukee county. Hereinafter these lots will be referred to as follows: The northerly lot as lot A; the center one as lot B; and the southerly one as lot C.
There was a well on lot B from which water was obtained by means of a hand pump. On September 30, 1937, the association sold lot C to the plaintiffs by land contract. Following the description of the premises, the contract contained the following:
". . . together with the right to use the well on the lot adjoining on the north, together with the owners or occupants of the two lots north of the above-described property."
On October 30, 1941, the association conveyed lot C to the plaintiffs by warranty deed and said deed contained the identical words used in the land contract with reference to the use of the well.
On October 21, 1937, the association sold lot B to John H. Armon and Ruby Armon, his wife, by land contract, which contained the following provision:
"The parties of the second part agree to permit the owners or occupants of the lot adjoining on the north and the lot adjoining on the south to use the well on the above-described property." *Page 430 
This land contract was duly recorded on September 20, 1944. Lot A was sold by the association to a party by the name of Spridco, who is not a party to this action.
In June, 1941, the purchasers of the three lots entered into an oral agreement to install an electric pump to pump water from the well to a pressure tank in the basement of the house located on lot B, each of the parties to pay one third of the cost thereof, and each to pay one third of the cost of operation and maintenance thereof. The purchasers of lots A and C then installed pipes which conveyed water from the pressure tank to their respective homes. Later a family by the name of Ladwig, which owned the lot immediately south of lot C, desired to obtain water from this system. An agreement was entered into whereby the Ladwig family connected with the water system on lot C upon payment of a portion of the original cost of the system and thereafter the Ladwigs contributed toward the cost of electric current and maintenance of the pump and pressure system.
On September 7, 1944, the Armons entered into a contract to sell said lot B to the defendants. On October 17, 1944, the Armons executed and delivered to the defendants a warranty deed to lot B. Nothing was mentioned in either the contract or the deed about the use of said well. The record discloses, however, that the defendants had knowledge of the fact that the people living on lots A and C, as well as the Ladwig family, used the well as a source of water supply. The Armons' contract from the association which contains the reference to the use of the well also was recorded prior to the completion of defendants' purchase and prior to the time they received their deed, and thus also gave constructive notice to the defendants of the rights of the adjoining owners.
After purchasing the property the defendants lived thereon, and the other parties continued to obtain their water supply from the well through the pressure system, and regularly paid to the defendants their stipulated shares of the cost of electric *Page 431 
current and the cost of maintaining the pump and water system. In August or September, 1947, following a disagreement between the parties, the defendants shut off the plaintiffs' supply of water.
The trial court held from the evidence adduced that the plaintiffs acquired an easement to use the well located upon the defendants' premises and to draw water therefrom, and that the defendants' ownership of their lot is subject to said easement. That part of the judgment is not questioned.
It was further held that the so-called oral agreement of June, 1941, as to the installation of the electric pump and pressure system was personal to the parties, that it did not operate to extend the terms of the granted easement and that the rights acquired by plaintiffs under the agreement constituted only a revocable license. It denied plaintiffs' prayer for judgment requiring compliance with the terms of what it considered the oral agreement.
It has been consistently held by this court that easements can only be acquired by grant or prescription, that they cannot be acquired by implication. Frank C. Schilling Co. v.Detry, 203 Wis. 109, 233 N.W. 635. We do not recede from nor abandon that rule. We consider, however, that we have here the question of the construction of the terms of the grant contained in the various instruments. They are ambiguous in that they do not describe the means by which water is to be taken from the well.
By the oral agreement of the owners of lots A and C and the predecessor of the owners of lot B and by their act of installation of a pump and pipes in 1941 they placed their own construction upon the terms of the easement as to the manner of taking water from the well. *Page 432 
"Such acts, giving a practical construction to the grant, will be deemed to express the intention of the parties, and the courts will give it the construction that the parties themselves have put upon it." 1 Thompson, Real Property (perm. ed.), p. 580, sec. 359.
The owners of lots A and C were and are entitled to the full use and reasonable enjoyment of the rights granted them by the easement.
"Every easement carries with it by implication the right, . . . of doing whatever is reasonably necessary for the full enjoyment of the easement itself." 28 C.J.S., Easements, p. 754, sec. 76.
". . . it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." 17 Am. Jur., Easements, p. 994, sec. 96.
Certainly, the full and proper enjoyment of the easement in this case contemplates the use of the well with facilities adapted to its use in connection with modern plumbing equipment. The parties themselves recognized this when they abandoned the old-fashioned hand pump.
This is not a case of the creation of a new right, or the extension of the terms of the easement. As we have pointed out, it is one of construction of the ambiguous terms of the grant.
By the Court. — Judgment reversed.