Paul D. ATKINSON, Plaintiff-Respondent,

v.

Donald D. MENTZEL, Defendant-Appellant.

Court of Appeals

*No. 96–0160. Submitted on briefs December 16, 1996.—Decided May 7, 1997.*

(Also reported in 566 N.W.2d 158.)

629

630

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William H. Gergen* of *Gergen, Gergen & Pretto, S.C.* of Beaver Dam.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul W. Rosenfeldt* of *Edgarton, St. Peter, Petak, Massey & Bullon* of Fond du Lac.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J. This is an action to determine the scope and extent of an easement. Both the appellant, Donald D. Mentzel, and the respondent, Paul D. Atkinson, requested the trial court to declare the scope and extent of Atkinson's access easement across Mentzel's land.

The trial court ruled that the language of Atkinson's easement was not limited to physical ingress and egress, but extended to the installment of utilities. We affirm this ruling. The trial court also expanded the boundaries of the original easement to include some additional portions of Mentzel's property. As to two of these expansions, we uphold the court's ruling. As to a further expansion, we reverse.

Mentzel raises two additional issues. He contends that the trial court erred in awarding him only $200 for damages which Atkinson caused to a portion of the easement property. He further contends that the trial court should have assessed costs against Atkinson for filing a frivolous defense. We reject both of these additional arguments.

## FACTS

Atkinson's complaint alleged that Mentzel had repeatedly refused to recognize Atkinson's right to access his land by an easement across Mentzel's property. Specifically, Atkinson alleged that Mentzel had denied him utility access across the easement area by repeatedly severing the telephone cable lines. Atkinson requested that the trial court declare the scope and extent of his easement and enjoin Mentzel from interfering with his right to the easement.

Mentzel answered Atkinson's complaint conceding that Atkinson had an access easement across his land but denying that the easement included access for

632

utility purposes. Mentzel also counterclaimed for trespass alleging that Atkinson had improperly extended the use of his easement beyond its boundaries and had improperly expanded the purposes of the easement by installing telephone cable service. Mentzel joined Atkinson's request that the trial court declare the scope and extent of the easement.

We begin by describing the layout of each party's property, recognizing that words are difficult to convey the visual image. Therefore, to assist the reader, we have prepared a diagram which we hope will assist in this effort. This diagram is attached to this opinion as "Exhibit A." We stress that this exhibit is *our* drawing based on the parties' briefs and the appellate record. It is not an exhibit from the trial court proceedings, nor is it drawn to scale.[1]

Mentzel's property is indicated as such on Exhibit A. Two of his boundaries are easily described. The property is bordered on the west by Lake Shore Drive and on the north by Roosevelt Avenue.

The southern and eastern boundaries are less easily described. Originally, the property was generally bordered on the south by Franklin Avenue. That street has since been vacated and, as a result, Mentzel's south border now includes all of the former Franklin Avenue. Closer to Lake Winnebago, however, this boundary extends south of Franklin Avenue to take in an area between Lake Winnebago and a channel leading from the lake to Franklin Avenue. As Exhibit A reveals, the southern half of vacated

---

[1] We have examined the appellate record to see if it contains an exhibit which would serve this purpose. While the record includes diagrams and drawings of the area, they do not capture the scene in a manner which would assist the reader.

Franklin Avenue is interrupted at one point by this channel.

On the east, Mentzel's property is bordered generally by Sheridan Drive. However, at the southern end of Sheridan Drive, Mentzel's property line tracks east to the shore of Lake Winnebago. Sheridan Drive has also been vacated. As a result, Mentzel acquired ownership of the western half of the vacated roadway and his adjoining landowners, including Atkinson, acquired ownership of the eastern half.

Atkinson's property is indicated as such on Exhibit A. It lies to the east and north of Mentzel's property and includes a structure indicated as the "Atkinson Boathouse/Garage" on the exhibit. The western boundary line is the center of the vacated Sheridan Drive. The east boundary line is Lake Winnebago. The southern boundary line is the Mentzel property which runs to the lake. The north boundary line greets other property unrelated to this case.

We now turn to the history of these properties which produced the easement. Mentzel's property was originally owned by Chaparral, Inc. (Chaparral) in 1980. The corporation's shareholders at the time of the purchase included Mentzel, Florian and Min-Chiang Erspamer, and one other partner. Chaparral operated a banquet facility on the property. During the time that Chaparral owned the property, Florian Erspamer purchased the property now owned by Atkinson. At that time, a boathouse existed on the property. Erspamer converted the boathouse into a storage garage facility. He rented space in the garage to Atkinson and others. Atkinson used the space to store a truck which he used in his trucking business. The other renters stored boats in the garage.

After a falling out between the Chaparral shareholders, Mentzel conveyed his interest in the corporation to Erspamer. Thereafter, a foreclosure action was commenced against Chaparral. Mentzel then reentered the picture, purchasing the property from Chaparral. The deed of conveyance created the easement at issue in this case. The deed reserved an easement to Erspamer in order to provide access to his property on Lake Winnebago. This easement occupied the south one half of vacated Franklin Avenue and is indicated on Exhibit A by the angular lines (/////). The easement is described in the deed as follows:

> Reserving unto Florian Erspamer and Min-Chiang Erspamer, his wife, their guests, invitees and assigns a right-of-way on and over the paved parking lot on the premises described in the first paragraph of the legal description set forth above extending from Lake Shore Road to Lake Winnebago. The purpose of this easement is to provide access from Lake Shore Drive to the following described real estate and shall allow access for all uses of said property other than retail sales.[2]

Erspamer later conveyed the property to Atkinson. At that time, the property did not have utility service.

## TRIAL COURT PROCEEDINGS

Both Mentzel and Atkinson asked the trial court to declare the scope and extent of the easement, particularly as to whether the easement permitted

---

[2] The easement does not recite a legal description of the easement. However, the parties agree that the area used by Erspamer for the easement is the area indicated by our marking on Exhibit A.

Atkinson to install utility service. Following a two-day bench trial, the court issued an oral decision followed by a written judgment which included the following conclusion of law:

> [T]he express purpose of the easement is to provide a right-of-way over [Mentzel's] property for access from the Atkinson property to Lake Shore Drive. . . . [T]his right-of-way for access to Lake Shore Drive is for all forms of ingress and egress and for all utilities whether above, at, or below grade, which lend themselves to the full use and enjoyment of the Atkinson property for any purpose with the sole exception of retail sales.

In addition, the trial court also redefined and expanded the boundaries of the easement in three respects. First, the court moved the easement from the south half of the vacated Franklin Avenue to the north half. This relocated area is represented on Exhibit A by the dotted markings along Franklin Avenue. The court reasoned that this alteration was necessary since a portion of the original easement route was now interrupted by the channel.

Second, the trial court expanded the boundaries of the easement to include the western half of vacated Sheridan Drive along the Atkinson/Mentzel property line. This expansion is represented on our exhibit by the dotted markings along Sheridan Drive. The court reasoned that this expansion was necessary so that Mentzel could access his garage with his trucks.

Third, the trial court expanded the boundaries of the easement to include a portion of Mentzel's property which lies between the channel and Lake Winnebago. This expansion is represented on our exhibit by the checkered markings (xxxx). As with the expansion

636

along Sheridan Drive, the court reasoned that this expansion was necessary so that Atkinson could effectively use the garage.

In further support of its rulings, the trial court also reasoned that these alterations and expansions were proper because the use access recited in the easement was unrestricted except as to retail sales.

The trial court also awarded Mentzel $200 in damages to cover his estimated expenses for removing certain debris and other materials which Atkinson had deposited on a portion of the easement property. Finally, the court denied Mentzel's request for frivolous costs based on an adverse possession defense which Atkinson had interposed, but later withdrew, in response to Mentzel's counterclaim for trespass.

Mentzel appeals all of the trial court rulings we have recited. We will state additional facts as we discuss the appellate issues.

## DISCUSSION

### Scope of the Access Easement

An easement is an interest in land which is in the possession of another. *See Millen v. Thomas*, 201 Wis. 2d 675, 678, 550 N.W.2d 134, 135 (Ct. App. 1996). An easement creates two distinct property interests: the dominant estate, which enjoys the privileges granted by an easement; and the servient estate, which permits the exercise of those privileges. *See id.* We must look to the instrument which created the easement in construing the relative rights of the landowners. *See Hunter v. McDonald,* 78 Wis. 2d 338, 342–43, 254 N.W.2d 282, 285 (1977). "The use of the easement must be in accordance with and confined to the terms and

purposes of the grant." *Id.* at 343, 254 N.W.2d at 285. Construction of the deed to determine the grant's terms and purposes is a question of law unless there is an ambiguity requiring resort to extrinsic evidence. *See Edlin v. Soderstrom,* 83 Wis. 2d 58, 69, 264 N.W.2d 275, 280 (1978). Whether an ambiguity exists is a question of law that we review de novo. *See Stauffacher v. Portside Properties, Inc.,* 150 Wis. 2d 242, 245, 441 N.W.2d 328, 330 (Ct. App. 1989).

The conveyance in this case states, in relevant part, that "[t]he purpose of this easement is to provide access from Lake Shore Drive to the following described real estate *and shall allow access for all uses of said property other than retail sales.*" (Emphasis added.) The conveyance also describes the easement as "a right-of-way on and over the paved parking lot on the premises described in the first paragraph of the legal description set forth above extending from Lake Shore Road to Lake Winnebago."

Mentzel argues that the terms "right-of-way" and "access" in the easement were meant to grant Erspamer only physical ingress and egress to his property. Mentzel contends that the trial court's interpretation allowing utility installation contradicts the definitions of the terms "access," "easement of access" and "right-of-way" as set forth in BLACK'S LAW DICTIONARY (5th ed. 1983).[3]

We disagree with Mentzel. The easement language does not limit the easement to "ingress" and "egress."

---

[3] Although the definition given by Mentzel defines "access" in terms of ingress and egress, *see* BLACK'S LAW DICTIONARY (5th ed. 1983), we note that AMERICAN HERITAGE DICTIONARY 71 (2nd ed. 1982), defines "access" as "[t]he right to enter or make use of." This definition of "access" supports Atkinson's position.

In fact, the easement does not even use those terms. Nor does the easement language limit use of the easement to simple "access" or "right-of-way." Rather, the easement provides "access for all uses of said property other than retail sales." We conclude that this modifying language broadens the access terms of the easement beyond strict physical ingress and egress. We therefore conclude that the trial court properly ruled that the easement extended to the installation of utilities.[4]

Like the trial court, we are persuaded by the reasoning of *Dowgiel v. Reid*, 59 A.2d 115 (1948).[5] There the court was asked to determine whether "the right to use a road to and from one's habitation" also included the right to provide the property with electricity. *See id.* at 117. The *Dowgiel* court relied upon language from various cases in concluding that "the weight of authority" favored a construction of easements which would allow for utility access. *See id.* at 118. The court observed that:

---

[4] If we reject Mentzel's threshold argument that the easement is not limited to physical ingress and egress, Mentzel does not further argue that the easement does not extend to utility access.

[5] By looking to the law of *Dowgiel v. Reid*, 59 A.2d 115 (1948), we obviously reject Mentzel's further complaint that the trial court erred by looking to the law of other jurisdictions. The Wisconsin courts have never spoken to whether the broad terms of an easement encompass the right to provide utilities to the dominant property. Moreover, the Wisconsin cases which Mentzel cites do not address the issue in this case—whether the installation of utilities is embraced by easement language which broadly grants "access for all uses" and then limits use for a particular purpose such as "retail sales."

"[I]t is well settled that where a right of way is granted in general terms no right in, or power over, the land but what is necessary to its reasonable enjoyment is conferred. The grantee is entitled to vary his mode of enjoying the same, and from time to time avail himself of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted."

*Id.* (quoted source omitted). The *Dowgiel* court additionally noted that "[w]hat is or is not a reasonable use of the way does not become crystallized at any particular moment of time. Changing needs of either owner may operate to make unreasonable a use of the way previously reasonable, or to make reasonable a use previously unreasonable." *Id.* at 119.

Based on this logic, the trial court in this case correctly observed:

The language of the easement . . . is broad and unrestricted and permits access for all uses . . . includ[ing] all utilities, water, sewer, power, or any convenience not yet conceived by man in the future that might arise that would be a logical extension of one's normal and proper uses of the property.

Our supreme court made a similar observation in *Scheeler v. Dewerd,* 256 Wis. 428, 432, 41 N.W.2d 635, 637 (1950). There the court stated:

"Every easement carries with it by implication the right . . . of doing whatever is reasonably necessary for the full enjoyment of the easement itself."
" . . . it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." [Quoted sources omitted.]

In this case, the only limitation which the easement recites is that the dominant estate not be used to conduct a business in "retail sales." Otherwise, the terms of the deed provide an access easement for "all uses of said property." Although at the time of the conveyance creating the easement the property was not served by utilities, the reasonable use of the property in current times requires utility services. Therefore, the installation of utilities is "necessary to the reasonable and proper enjoyment of the easement." *Id.* We uphold the trial court's construction of the easement to permit utility access.[6]

### *Alteration and Expansion of the Easement*

The trial court also altered and expanded the easement. Mentzel challenges these rulings.

The easement conveyance described the easement area as follows: "a right-of-way on and over the paved parking lot on the premises described in the first paragraph of the legal description set forth above extending from Lake Shore Road to Lake Winnebago."

When the location of a right-of-way easement is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land. *See Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 417, 141 N.W.2d 306, 310 (1966). If the parties cannot

---

[6] Because we conclude that the installation of utilities is encompassed by the broad and unambiguous terms of the easement, we do not address Atkinson's further argument that he is entitled to an easement of necessity. *See Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782, 784 (Ct. App. 1994) (we need only address dispositive issues and decide the matter on the narrowest ground).

agree upon a location, the court has the power to affirmatively and specifically determine the easement's location. In doing so, the reasonable convenience of both parties is of prime importance. Furthermore, the court cannot act arbitrarily and must proceed with due regard for the rights of the parties. *See id.*

In addressing these issues, we break the discussion out into three categories: (1) the relocation of the easement along vacated Franklin Avenue; (2) the expansion of the easement along the vacated Sheridan Drive; and (3) the expansion of the easement to include a portion of Mentzel's property lying south of Atkinson's property between the channel and Lake Winnebago.

### *Franklin Avenue*

The easement conveyance does not recite any legal description of the easement. Nor does the easement describe where the paved parking lot is situated. Both parties conceded in the trial court that this description was not well defined. Nevertheless, the parties agreed that the intended location of the easement (the paved parking lot) was the southern one-half of the vacated Franklin Avenue. The trial court altered this location to the northern half of the vacated Franklin Avenue. Mentzel challenges this ruling.

We begin by noting that Mentzel expressly conceded before the trial court that the northern thirty feet of Franklin Avenue was an acceptable placement of the easement.[7] Thus, Mentzel invited this portion of the trial court's ruling. Generally, we will not review

---

[7] The exchange which took place between the court and Mentzel's counsel was as follows:

invited error. *See Shawn B.N. v. State*, 173 Wis. 2d 343, 372, 497 N.W.2d 141, 152 (Ct. App. 1992).

■

Nonetheless, we choose to address the issue on its merits. A precise location of the intended easement is not possible because it is not sufficiently described in the deed of conveyance. The lack of precision in the language of the conveyance describing the location of the easement permits the court to fix a reasonably convenient access route. *See Werkowski*, 30 Wis. 2d at 417, 141 N.W.2d at 310. Moreover, even if adequately described, the original easement route cannot be used to accomplish the purpose of the easement. Assuming the easement described the south half of Franklin Avenue, that route does not provide Atkinson with a useable access because the route is interrupted by the channel. Thus, the trial court was entitled to fix a reasonable alternate route bearing in mind the reasonable convenience of both parties. *See id.*

■

Therefore, under either theory (ambiguity of the language or lack of feasible use), we uphold the trial court's change in the location of the easement along Franklin Avenue.

COURT: And your position still would be to concede or allow an easement over the north thirty feet of Franklin Avenue from [Lake Shore Drive] all the way to [Atkinson's] property?

COUNSEL: Yes, Your Honor . . . .

. . . .

COURT: You are conceding you will give an easement for the north thirty feet anyway?

COUNSEL: That is our agreement, Your Honor.

The trial court also expanded the easement to include the western thirty feet of vacated Sheridan Drive along the Atkinson/Mentzel property line. Mentzel challenges this ruling.

Atkinson's garage physically sits within the eastern thirty feet of the vacated Sheridan Drive. Thus, the west side of the garage is located only four to five feet off the eastern boundary of Mentzel's property. The building is serviced by large garage doors on this side of the property. Atkinson cannot maneuver his trucks in and out of the garage without trespassing on Mentzel's property. The trial court's expansion of the easement legalized this intrusion.

Mentzel reasons that since Atkinson already can gain access to his property via the Franklin Avenue easement, the discussion should end. That approach, however, is far too narrow because it views access in a vacuum and it does not address *whether the access accomplishes the true purpose of the easement.*

Here, the easement was originally granted so that Erspamer, the original owner of the dominant estate, could access *and meaningfully use* the boathouse/garage facility. While Atkinson, the present owner, can access his property via the easement, he cannot maneuver his vehicles in and out of his garage without trespassing on Mentzel's property because the garage doors along Sheridan Drive are on the doorstep of Mentzel's property. Under those circumstances, Atkinson's easement becomes meaningless.

In such a case, the law allows a court to confer " 'such rights as are incident or necessary to the reasonable and proper enjoyment of the easement,' " *Scheeler,* 256 Wis. at 432, 41 N.W.2d at 637 (quoted

source omitted). The trial court's expansion of the easement to take in the western half of the vacated Sheridan Drive allows Atkinson to use the garage facility for the purpose intended. We uphold this portion of the trial court's alteration and expansion of the easement.

### Property South of the Garage

A door also services the south side of Atkinson's garage. From the photographs in evidence, this appears to be a smaller door than those on the west side of the building. Atkinson testified that he uses this additional door to access and exit the garage with boats, trailers and trucks in excess of twenty-six feet. Atkinson owns approximately nineteen feet of additional land off the south edge of the garage. Mentzel owns the remaining property running south to the channel and east to the lake. When using this exit, Atkinson uses not only his adjoining nineteen feet, but also Mentzel's property. Atkinson also uses this area as a turnaround area for his vehicles. The trial court expanded the easement to include this additional portion of Mentzel's property.

In making this ruling, the trial court appears to have reasoned that since the easement was for access purposes and since the use was not restricted (except as to retail sales), the court could properly broaden the easement to provide ingress and egress to all areas of the garage. We disagree with this reasoning.

We do not read the law to say that a broad grant of an access easement means that all accommodations which serve the purpose of the easement must be allowed. Rather, the test is whether the owner of the dominant estate can reasonably use the property as

intended. Stated differently, but to the same effect, the easement must be interpreted so as to accomplish its purpose bearing in mind the reasonable convenience of both parties. *See Werkowski*, 30 Wis. 2d at 417, 141 N.W.2d at 310. Once this purpose is served, further expansion of the easement is neither necessary nor warranted.

Here, under questioning by the trial court, Atkinson testified that his vehicles can enter and exit the garage from the west along Sheridan Drive. He also testified that he could turn his vehicles around by backing in and out of the garage. He further testified that he could add a door facing Lake Winnebago on the eastern side of the garage for exit or ingress purposes. ▬

Unlike the expansion along Sheridan Drive which the trial court had already properly granted, a denial of this additional expansion would not have rendered Atkinson unable to use the garage for its intended purposes. Undoubtedly, this added expansion makes Atkinson's use of the garage more convenient. But, as we have indicated, the law does not mandate expansion of an easement to accord the owner additional conveniences once the purpose of the easement is satisfied. Rather, the law permits expansion of an easement to assure that the easement owner may experience " 'reasonable and proper enjoyment of the easement.' " *See Scheeler*, 256 Wis. at 432, 41 N.W.2d at 637 (quoted source omitted). The easement expansions which the trial court granted as to Franklin Avenue and Sheridan Drive accomplished that purpose. The instant expansion moved beyond that purpose.

## Damages

Mentzel contends that the trial court erred in awarding him only $200 in damages. Mentzel's damage claim was based on estimated costs he will incur for removing concrete slabs at the shoreline, removing crushed stone and concrete in the driveway area, and removing and replacing broken blacktop. He presented his own testimony and documentation evidence in support of his approximate $3000 claim. Atkinson testified that the reasonable cost was $200.

The trial court concluded that Atkinson was entitled to deposit the gravel on Mentzel's property in order to maintain his easement and therefore dismissed Mentzel's damage claim relating to removal of the gravel. The court did find, however, that Atkinson's placement of the concrete slabs along the banks of the channel was not necessary to maintain the easement and that Atkinson would have to compensate Mentzel for that removal cost. But the trial court found that "the value submitted by [Mentzel] is excessive . . . ." Thus, the court opted for the only other evidence on the question—Atkinson's estimate.

The trial court's findings of fact will not be overturned unless they are clearly erroneous. *See* § 805.17(2), STATS. In addition, we must give due deference to the trial court's assessment of the credibility of the witnesses. *See id.* The trial court obviously found Mentzel's testimony suspect on this question. We also bear in mind that Mentzel, as the claimant, had the burden of proof to establish his damages. As such, the court could well have determined that Mentzel was entitled to no damages. Nonetheless, the court chose to adopt Atkinson's estimate. We uphold the trial court's damage award.

## Costs

Mentzel challenges the trial court's order denying his motion to assess costs against Atkinson under §§ 814.025 and 802.05, STATS., for filing a frivolous affirmative defense based on the law of adverse possession.

This issue arises from developments during the pleading and pretrial stages of this action. Atkinson's counsel initially responded to Mentzel's counterclaim of trespass with an affirmative defense of adverse possession under § 893.25, STATS. Mentzel's counsel opposed the claim, asserting that adverse possession would be impossible to prove under the facts of this case. However, after the deposition of Florian Erspamer and before the commencement of the trial, Atkinson's counsel voluntarily withdrew the affirmative defense. Mentzel argues that under these facts, counsel knew or should have concluded that the adverse possession affirmative defense was without reasonable basis in law or equity. *See* § 814.025, STATS.

The question as to what was known or reasonably should have been known in the context of a frivolous action issue presents a question of fact. *See Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 241, 517 N.W.2d 658, 666 (1994). However, whether that factual determination constitutes frivolousness within the meaning of § 814.025(3)(b), STATS., is a question of law which we review independently. *See Stern,* 185 Wis. 2d at 241, 517 N.W.2d at 666. Because frivolousness exists only when *no* reasonable basis exists for a claim or defense, we resolve all doubts in favor of the attorney. *See Swartwout v. Bilsie,* 100 Wis. 2d 342, 350, 302 N.W.2d 508, 514 (Ct. App. 1981).

Here, the facts regarding this issue are not disputed. Atkinson's attorney filed an affidavit in response to the frivolousness claim. He recounted his understanding of the facts before he replied to Mentzel's trespass claim with the affirmative defense of adverse possession. He stated that he had spoken to both Atkinson and Erspamer regarding their understandings of the western and southern boundaries of the garage property. Erspamer informed counsel that he and the prior owner had maintained the boundaries of the garage property to approximately the same extent as Atkinson. Counsel also spoke to the prior owner who confirmed Erspamer's information. Based on this information, counsel asserted the affirmative defense of adverse possession. However, after Erspamer and the prior owner were deposed and prior to trial, Atkinson's counsel decided to voluntarily withdraw this theory of defense.

An attorney has an obligation to represent the client zealously; this may include making some claims which are not entirely clear in the law or on the facts, at least when an action is commenced. *See Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663. Based on our review of the record, we conclude that Atkinson's counsel's initial assertion of the adverse possession defense was not frivolous. Based on his investigation, counsel had a plausible basis for asserting the claim. When that basis was called into question by subsequent developments, counsel properly withdrew it. Both actions were in keeping with professional norms. The trial court properly rejected Mentzel's claim for frivolous costs.

## CONCLUSION

The trial court properly construed the easement to include access for utilities. The court also properly expanded the easement along the vacated Franklin Avenue and Sheridan Drive. The court improperly expanded the easement as to Mentzel's land to the south of Atkinson's property. The court properly determined Mentzel's damages. Finally, the court properly rejected Mentzel's request for costs.

*By the Court.*—Judgment affirmed in part and reversed in part.

EXHIBIT A

ROOSEVELT AVENUE

N

LAKE SHORE DRIVE

SHERIDAN DRIVE (VACATED)

FRANKLIN AVENUE (VACATED)

MENTZEL PROPERTY

ATKINSON BOATHOUSE/ GARAGE

ATKINSON PROPERTY

LAKE WINNEBAGO

CHANNEL

ORIGINAL EASEMENT

EASEMENT GRANTED BY TRIAL COURT (AFFIRMED)

EASEMENT GRANTED BY TRIAL COURT (REVERSED)

651