Philip Mnuk and Holly Mnuk,
Plaintiffs-Respondents,

v.

Harmony Homes, Inc., Defendant-Appellant.

Court of Appeals

*No. 2009AP1178. Submitted on briefs March 8, 2010.
—Decided July 29, 2010.*

2010 WI App 102

(Also reported in 790 N.W.2d 514.)

Before Vergeront, Lundsten and Fitzpatrick, JJ.[1]

¶ 1. VERGERONT, J.   This action arises out of two access easement agreements between adjoining landowners in which each granted an easement to the other for the purpose of building a joint driveway. The agreements also provided that one of the landowners, Harmony Homes, Inc., was financially responsible for build-

[1] Rock County Circuit Court Judge Michael R. Fitzpatrick is sitting by special assignment pursuant to the Judicial Exchange Program.

ing and maintaining the driveway.[2] The other landowner, Philip and Holly Mnuk, filed this action seeking modification of the easements and other relief based on the impossibility of building the driveway on the easements because of the existence of wetlands. Harmony Homes appeals two rulings of the circuit court in favor of the Mnuks. First, Harmony Homes contends the court erred in concluding the action was timely. According to Harmony Homes, the six-year statute of limitations for contract actions applies, not the forty-year statute of limitations regarding easements. Second, Harmony Homes contends the court erred in concluding it had the authority to modify the easements. According to Harmony Homes, the easements must be terminated because it is now impossible to fulfill their primary purpose.

¶ 2. On the first issue, we conclude that the two claims relevant to this appeal are timely. The Mnuks' claim for a modification of the easements is governed by the forty-year statute of limitations for enforcing easements, Wis. Stat. § 893.33(6) (2007–08),[3] not the six-year statute of limitations for contract actions, pursuant to § 893.43. As to their claim for a declaration of Harmony Homes' obligations under the construction provisions of the agreements, even if § 893.43 is the applicable statute of limitations—an issue we do not decide—the six years has not yet begun to run because there has been no breach of the construction provisions.

---

[2] As we explain later in this opinion, John and Diane Stelpflug executed the agreement as the owners of lot 120 and Harmony Homes subsequently purchased this lot from the Stelpflugs.

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3.  On the second issue, we conclude the circuit court employed an incorrect analysis but we affirm because we conclude that RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) (2000)[4] is applicable. Under this provision, the circuit court has the discretionary authority to modify or terminate the easements, given that it is impossible to accomplish their primary purpose. In addition, under this provision, the court has the authority to award compensation for harm resulting from either modification or termination.

¶ 4.  Accordingly, we affirm and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 5.  For purposes of this appeal, the relevant facts are not in dispute. Harmony Homes was a joint venturer in the development of a subdivision in the Town of Waukesha. The Mnuks purchased lot 121 in 1987. Lot 121 lies to the north of several lots that abut the street, Kame Terrace, to the south. The Mnuks have an easement (western easement) over two of these lots for access to the western part of their property, where they built a residence.

¶ 6.  In 1990 the Stelpflugs purchased the lot to the north of the Mnuks, lot 120. The Stelpflugs subsequently filed a lawsuit claiming that their property was landlocked and demanding that the town lay out a public road over the western easement and apparently over a small portion of the Mnuks' property. In order to provide the Stelpflugs access without a public road, and in order to provide the Mnuks with access to the eastern part of their property, the Stelpflugs, the

---

[4] All references to RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES are to the 2000 version unless otherwise noted.

Mnuks, and Harmony Homes entered into negotiations.[5] The result was the withdrawal of the Stelpflugs' petition for a public road and drafting of the access easement agreements that are at issue in this case.

¶ 7. As part of these negotiations Harmony Homes hired surveyors to lay out an area over eastern portions of lots 121 and 120 that the Mnuks describe as "poles"—narrow pieces of land on each lot that extend to Kamen Terrace—for a driveway that provides access to both lots. This area was laid out in a manner that took into account the wetlands that were there.[6] In 1995 the Stelpflugs and the Mnuks both signed a Lot 120 Access Easement Agreement under which the Stelpflugs granted the Mnuks a perpetual, nonexclusive easement on the described area on their property for motor vehicle and pedestrian ingress and egress. At the same time, both parties also signed a Lot 121 Access Easement Agreement under which the Mnuks granted the Stelpflugs the same type of easement on a described area of the Mnuks' property.

¶ 8. In addition, in the Lot 121 Access Easement Agreement, the Mnuks granted the Stelpflugs the right to construct and maintain a driveway in a specified location on the easement they granted. In the Lot 120 Access Easement Agreement the Stelpflugs granted the

---

[5] In the context of the negotiations leading to the access easement agreements, the Mnuks obtained approval to divide their lot into two parcels. The driveway provided for in the access easement agreements was to provide access to the eastern parcel. Apparently the Mnuks cannot construct a home on the eastern parcel without the contemplated access.

[6] The Stelpflugs' claim that lot 120 was landlocked—a claim that was upheld—was apparently based in part on the fact that they could not use the "pole" of their lot for access because there were wetlands there.

188

Mnuks the right to use the driveway that the Stelpflugs were to construct on the easement they granted. Both agreements contained identical provisions on construction of the driveway under which the Stelpflugs were responsible, "at [their] sole expense" for the construction and were to pave it by the earlier of one year from the construction of a dwelling on their property or three years from the date of the agreement. If they did not complete it within that time period, the Mnuks could contract for the work and the Stelpflugs were responsible for the costs. The Stelpflugs were also responsible for the maintenance and repair of the driveway.

¶ 9. The Lot 121 Access Easement Agreement also obligated the Stelpflugs to reconstruct the western easement within three months of the agreement.

¶ 10. In 1997 the Stelpflugs sold lot 120 to Harmony Homes. Apparently, Harmony Homes concedes that it thereby assumed the obligations of the Stelpflugs under the 1995 access easement agreements. Harmony Homes did not complete the reconstruction of the western easement until 2002. Harmony Homes then informed the Mnuks that it was going to build the driveway described in the access easement agreements. Because of the passage of time, the wetlands needed to be re-delineated and this process revealed that there were wetlands in the area on which the turnaround of the driveway was to be built. Harmony Homes and the Mnuks attempted to negotiate a new location for the driveway to avoid the wetlands but were unable to do so.

¶ 11. The Mnuks filed this action in March 2007 seeking a declaratory judgment modifying the easements, a declaration that Harmony Homes is bound by its obligations under the access easement agreements, and other relief.

189

¶ 12.  Harmony Homes moved for summary judgment on two primary grounds: (1) the Mnuks' claims are barred by the six-year statute of limitations for contract actions; and (2) the easement agreements should be terminated because it is not possible to construct a driveway on the easements given the wetlands, and the court did not have the authority to modify the easements. The circuit court concluded that the forty-year statute of limitations for easements applied, not the six-year statute of limitations for contract actions, and therefore the action was timely. The court also concluded that it was legally impossible to build a driveway on the easements described in the agreements, that the legal descriptions were severable under the severability clause in the agreements, and that this created an ambiguity, which gave the court the authority to modify the easements. The court also concluded that, because the designated time period for Harmony Homes' construction of the driveway had passed, the Mnuks could install it and Harmony Homes would then be responsible for reimbursing the Mnuks.

¶ 13.  The court's order anticipated further proceedings in which it would decide how to modify the easement. We granted Harmony's petition for leave to appeal this non-final order.

## DISCUSSION

¶ 14.  On appeal Harmony Homes renews its arguments that the action should be dismissed because it is barred by the six-year statute of limitations for contract actions and, alternatively, the easements may not be modified and should be terminated.

¶ 15.  The effect of the circuit court's challenged rulings was a denial of Harmony Homes' motion for summary judgment and a partial summary judgment in

190

the Mnuks' favor. Because the relevant facts are undisputed, the question is whether the circuit court's rulings were correct as a matter of law. *See* Wis. Stat. § 802.08(2). Our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987).

## I. Statute of Limitations

■

¶ 16. Harmony Homes contends that the Mnuks' claims are governed by Wis. Stat. § 893.43, which provides: "An action upon any contract, obligation or liability, express or implied . . . shall be commenced within 6 years after the cause of action accrues or be barred." According to Harmony Homes, the Mnuks' cause of action accrued when Harmony Homes did not build the driveway within three years from the date of the agreements and, thus, the Mnuks had to file their action before July 13, 2004. The Mnuks respond that the proper statute of limitations is that contained in § 893.33(6), which provides that an action to enforce a recorded easement may be filed anytime within forty years of the recording.[7] They also assert that the agreements do not require Harmony Homes to build the driveway within three years but, rather, provide that, if it does not, the Mnuks may build it and

---

[7] Wisconsin Stat. § 893.33(6) provides in full:

Actions to enforce easements, or covenants restricting the use of real estate, set forth in any recorded instrument shall not be barred by this section for a period of 40 years after the date of recording such instrument, and the timely recording of an instrument expressly referring to the easements or covenants or of notices pursuant to this section shall extend such time for 40-year periods from the recording.

Harmony Homes must pay for it. Therefore, they continue, no cause of action for a breach of that obligation has yet accrued.

■■

¶ 17. Examining the access easement agreements, we see that the "Grant" section of each access easement agreement meets the definition of easement. An easement is "an interest that encumbers the land of another" and "is a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the land." *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 2, 296 Wis. 2d 1, 717 N.W.2d 835 (citations omitted).[8] The label of the documents—"access easement *agreement*" (emphasis added)—and the fact that each document is signed by both parties does not transform the grant of easement in each document into a contract subject to contract law. *See Public Serv. Corp. v. Marathon County*, 75 Wis. 2d 442, 446–47, 249 N.W.2d 543 (1977) (A document granting a property interest was an easement, regardless of form.). *See also Rice v. Reich*, 51 Wis. 2d 205, 208, 186 N.W.2d 269 (1971) (An easement called a "lease" is still an easement because courts look to the essential nature of the agreement or property right involved.). It is clear the Mnuks are alleging that the driveway cannot now be built on the easements described in the access easement agreements because of

---

[8] "An easement creates two distinct property interests—the dominant estate, which enjoys the privilege as to the other land granted by an easement, and the servient estate, which permits the exercise of those privileges." *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 3, 296 Wis. 2d 1, 717 N.W.2d 835. We will use the terms "easement holder" and "landowner" to designate the owner of the dominant estate and the servient estate, respectively.

the more recent wetland delineation and they are seeking a modification of the easements. This claim for relief is an action to enforce the recorded easements, albeit a modified version, and is therefore governed by the forty-year statute of limitations in WIS. STAT. § 893.33(6).

■

¶ 18. The Mnuks are also seeking a declaration of the obligations of Harmony Homes with respect to the construction of the driveway and the reimbursement to the Mnuks if they build it. Even if we assume the construction provisions are distinct from the easements, arise under contract, and are therefore subject to the six-year statute of limitations—as Harmony Homes contends—the undisputed facts show that a breach did not occur in July 1998.[9] We agree with the Mnuks that the plain language of the construction provisions in the access easement agreements does not obligate Harmony Homes to build the driveway within three years of the agreements. Indeed, it does not obligate Harmony Homes to build the driveway at all. What Harmony Homes must do, if it does not itself

---

[9] In *Shanak v. City of Waupaca*, 185 Wis. 2d 568, 584–85, 518 N.W.2d 310 (Ct. App. 1994), we held that an easement holder is entitled to make improvements to an easement so long as that does not increase the burden on the landowner, and an easement holder also has a duty to repair the improvements unless there is an agreement to the contrary. We held that this duty to repair is not contractual but is a duty arising out of the relationship between the easement holder and the landowner. Therefore, we concluded, the six-year statute of limitations in WIS. STAT. § 893.43 is not applicable. *Id.* at 585–86. In this case it is not necessary to resolve the Mnuks' argument that Harmony Homes' obligations under the construction provision arise out of the relationship between easement holder and landowner and are not contractual.

build the driveway, is reimburse the Mnuks if they build it. It is undisputed that the Mnuks have not built the driveway and, thus, Harmony Homes' obligation to reimburse them has not yet been triggered. Accordingly, no cause of action for a breach has accrued.

■

¶ 19.  Parties to written instruments may seek a declaration of the construction or validity of the instrument, and a contract may be construed either before or after a breach. WIS. STAT. § 806.04(1)-(3). Thus, the Mnuks need not allege a breach by Harmony Homes of its obligations under the construction provision in order to seek a declaration of those obligations.[10]

¶ 20.  We conclude that the six-year statute of limitations for contract actions, WIS. STAT. § 893.43, does not govern the Mnuks' claim for a modification of the easements described in the easement access agreements. We also conclude that, assuming the construction provisions in those agreements are governed by § 893.43, the six years has not yet begun to run. Accordingly, there is no statutory bar to the Mnuks'

---

[10] The Mnuks' complaint also asserts they are "entitled to compensation for the additional burden on their property due to the increased area for construction of the driveway in the form of either monetary damages to be determined by the court, or an even exchange of plaintiffs' and defendant's real property permitting plaintiffs access to the newly created cul de sac." Neither party in their briefs mentions this request for relief. We are uncertain on what ground the Mnuks assert this entitlement. However, it is inconsistent with their brief to assert that they are entitled to damages or land exchange because Harmony Homes breached the construction provisions by not building the driveway by July 1998. Accordingly, we assume this request for relief is based on another legal theory. It is unnecessary to resolve this issue on this appeal.

claim for a declaration of Harmony Homes' obligations under the construction provisions.

## II. Modification or Termination of Easements

¶ 21.   Harmony Homes contends that the circuit court erred in concluding that the severability clause authorized it to modify the easements and that the law does not permit modification of the easements in this case because the description is clear. According to Harmony Homes, termination of an easement is the proper remedy when the primary purpose of an easement is rendered impossible to fulfill. The Mnuks respond that the circuit court's analysis based on the severability clause was correct and that modification of the easements is warranted.

¶ 22.   The severability clause in both access easement agreements provides that "[i]f any term, covenant or condition of this Agreement or its application shall be invalid and unenforceable under applicable law, the remainder of this Agreement shall remain in full force and effect and shall not be effected [sic] by such partial invalidity or unenforceability." The circuit court agreed with the Mnuks' theory that this clause permitted the court to sever the easement descriptions in the agreements and then adopt different descriptions. The court reasoned that the easements, as described, were not enforceable because, due to the wetlands, it was legally impossible to build a driveway on them and therefore severance was proper. In the court's view, this severance made the location of the easements ambiguous and gave it the authority to modify the original descriptions.

¶ 23.   We first examine the circuit court's analysis relying on the severability clause. We conclude this analysis is incorrect because it confuses the concept of

195

construing ambiguous easement descriptions with the concept of providing a remedy when it is no longer possible for a clearly described description to accomplish its purpose.[11]

■■

¶ 24. The easements in this case are express easements—easements created by written grant. *See AKG*, 296 Wis. 2d 1, ¶ 15. We construe the written instrument granting an easement as we do other written instruments, and the purpose is to ascertain the intent of the parties. *Rikkers v. Ryan*, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). We look first to the language of the easement to determine the parties' intent and, if that is unambiguous, we apply that language. *Id.* If there is an ambiguity, the court may consider extrinsic evidence, but the purpose remains that of determining the parties' intent at the time of the grant. *See id.*

■

¶ 25. In this case, there is no ambiguity in the description of the easements in the agreements and there is therefore nothing for the court to construe. The issue is not what the parties intended at the time they

---

[11] There may be independent reasons why a severability clause may not be used to sever an easement description and enforce what remains. For example, because express easements are subject to the statute of frauds, *see Rock Lake Estates Unit Owners Association v. Township of Lake Mills*, 195 Wis. 2d 348, 373 n.15, 536 N.W.2d 415 (Ct. App. 1995), the conveying instrument must identify the easement with reasonable certainty. *Anderson v. Quinn*, 2007 WI App 260, ¶ 29, 306 Wis. 2d 686, 743 N.W.2d 492. If and how this requirement squares with the circuit court's analysis is an inquiry we need not undertake. Similarly, we do not address whether there are any limitations on the application of severability clauses generally that would be inconsistent with the circuit court's approach.

entered into the agreements but what should happen now, when they agree that the easements cannot accomplish the purpose for which they were granted. The circuit court, if it proceeds as contemplated, will not be attempting to determine the parties' intent at the time they entered into the agreements, subject to the case law that governs that inquiry. Instead, it will be attempting to modify the location of the easements the parties agreed to in order to accomplish the purpose of those easements. We conclude the correct way to determine if the circuit court has this authority is to examine the easement law on impossibility of purpose. We turn to this issue now.

¶ 26.  Our starting point is *AKG*, in which the supreme court considered, and rejected on the facts, a landowner's claim for modification or termination of an express easement due to the impossibility of purpose. *AKG*, 296 Wis. 2d 1. The landowner argued that the purpose of the 1961 easement was to provide ingress and egress until public road access was provided, but subsequent state regulations made it impossible to construct a public road along the easement. *Id.*, ¶ 22. In making this argument, the landowner asked the court to adopt RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1), which addresses impossibility of purpose. This provides:

> When a change has taken place since the creation of a servitude[12] that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may

---

[12] "The servitudes covered by this Restatement are easements, profits, and covenants." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.1(2).

197

terminate the servitude. Compensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the servitude. [Footnote added.]

¶ 27.   In *AKG* the court made the following statement about this provision:

Subsection (1) reflects the common law rule that an easement for a particular purpose terminates when it becomes impossible to use the easement for the purpose intended in the granting instrument. *Restatement (Third) of Property: Servitudes* § 7.10, at 399 (Reporter's Note) (noting that traditionally courts terminate easements when the purpose becomes impossible to accomplish rather than by resort to the changed conditions doctrine); 25 Am. Jur. 2d *Easements and Licenses* § 96 (2004) ("An easement granted for a particular purpose normally terminates as soon as such purpose . . . is rendered impossible of accomplishment.").

*AKG*, 296 Wis. 2d 1, ¶ 19.

¶ 28.   The *AKG* court then proceeded to examine the primary purpose of the easement. It concluded the primary purpose was not to become a public road but to provide ingress and egress to the easement holder's land over a specifically described course. *Id.*, ¶ 23. This purpose, the court held, was not frustrated or impossible to fulfill. *Id.*

¶ 29.   In *AKG* the landowner made a second argument under subsection (2) of RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10, which addresses the situation in which "the purpose of a servitude can be accomplished, but because of changed conditions the servient estate [landowner's property] is no longer suitable for uses permitted by the servitude." In this situation "a court may modify the servitude to permit

other uses under conditions designed to preserve the benefits of the original servitude." § 7.10(2). The landowner in *AKG*, who was developing a subdivision, argued that the easement unreasonably burdened its property and that it had offered an alternative access route to the easement holder, but the easement holder had refused. *AKG*, 296 Wis. 2d 1, ¶ 25.

¶ 30.  The *AKG* court rejected RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(2) because it would alter the "longstanding default rule in Wisconsin that a servient estate [the landowner] cannot unilaterally relocate or terminate an express easement" and the court was not convinced it "should sacrifice property rights . . . in favor of economic efficiency."[13] *AKG*, 296 Wis. 2d 1, ¶¶ 31, 34, 35.

¶ 31.  Harmony Homes reads *AKG* as supporting its position that a court may not modify an express easement and reasons from there that a court may terminate but not modify an express easement that no longer accomplishes its primary purpose. This is a misreading of *AKG*. As we have already explained, the court rejected the proposition that a landowner could obtain an easement modification for economic reasons when the primary purpose could still be accomplished. *Id.*, ¶¶ 29, 31. However, the court did not reach the question of a court's authority to provide relief when it is impossible to accomplish the primary purpose. This was unnecessary in *AKG* because the court determined it was still possible in that case to accomplish the primary purpose. In short, *AKG* leaves open the question whether a court should apply RESTATEMENT (THIRD)

---

[13] By "default rule" the court meant that this is the rule for an express easement when there is no express provision stating otherwise. *See AKG*, 296 Wis. 2d 1, ¶ 34.

OF PROPERTY: SERVITUDES § 7.10(1) in a case where it is impossible to accomplish an easement's primary purpose.

¶ 32.   We have not located any subsequent Wisconsin case discussing RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1). However, one case of this court, *Atkinson v. Mentzel*, 211 Wis. 2d 628, 566 N.W.2d 158 (Ct. App. 1997), applied the substance of that rule as an alternative basis for affirming a modification in the intended location of an easement. In *Atkinson* the parties agreed the easement was not well-defined in the conveyance but agreed on the intended location. *Id.* at 642. The circuit court altered that location because the intended access to the lake was now interrupted by a channel. *Id.* at 636, 643. We first noted that, because the description in the conveyance was not definite, the circuit court had the authority under *Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966), to fix a reasonably convenient access route. *Atkinson*, 211 Wis. 2d at 643. In *Werkowski* the court applied the principle that when a right of way is not defined by the grant, a court has the equitable power to determine the location. *Werkowski*, 30 Wis. 2d at 417.[14]

¶ 33.   In *Atkinson* we also cited *Werkowski* for the following ruling:

---

[14] The court in *Werkowski* stated:

It is well settled that if the location of a right of way is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land . . . . If a location is not selected by either the servient or the dominant owner and they cannot agree upon a location, a court of equity has the power affirmatively and specifically to determine the location of the servitude. The reasonable convenience of both parties is of prime importance and the court cannot act arbitrarily, but must proceed with due regard for the rights of both parties. [Footnote omitted.]

Moreover, even if adequately described, the original easement route cannot be used to accomplish the purpose of the easement. Assuming the easement described the south half of Franklin Avenue, that route does not provide Atkinson with a useable access because the route is interrupted by the channel. Thus, the trial court was entitled to fix a reasonable alternate route bearing in mind the reasonable convenience of both parties.

*Atkinson*, 211 Wis. 2d at 643 (citing *Werkowski*, 30 Wis. 2d at 417).

██

¶ 34. Thus, in *Atkinson* we expanded the principle in *Werkowski* to allow a court to modify a definite description on the ground of impossibility. However, we did not discuss the issue presented by the parties' arguments here: whether the court must terminate the easement, as Harmony Homes contends, or has the authority to modify it, as the Mnuks contend. Because RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) directly addresses this issue, we consider whether we should apply it here. For the following reasons, we conclude it is the appropriate rule to apply in this case.[15]

¶ 35. As the *AKG* court noted, RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) "reflects the common law rule that an easement for a particular

*Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966) (quoting 17A AM. JUR. *Easements* § 101 (1957)).

[15] We phrase the issue as "whether we should apply [§ 7.10(1)] here," following the supreme court's approach. The supreme court has explained that its "long-standing practice has been to review and decide whether to adopt sections from the Restatements on a case-by-case basis as [it] deem[s] it necessary." *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 19 n.7, 318 Wis. 2d 622, 768 N.W.2d 568 (citation omitted).

purpose terminates when it becomes impossible to use the easement for the purpose intended." *AKG*, 296 Wis. 2d 1, ¶ 19 (citations omitted) Comment a. to § 7.10 explains why the subsection has adopted—indeed, makes primary—the remedy of modification:

> The changed-conditions rule has traditionally been used to terminate servitudes, rather than to modify them, but the less drastic step should be taken if modification would permit the servitude to continue to serve the purpose for which it was designed to an extent that is worthwhile. Modification is appropriate, however, only if it does not materially increase the burden on the servient estate. If modification is not appropriate, the servitude may be terminated. When a servitude is modified or terminated under this section, a court may award compensation to the beneficiaries for damages they will suffer as a result of the modification or termination.

RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.10, cmt. a. at 395.

¶ 36. Because modification is a less drastic remedy than termination, we see no reason why that should not be the remedy the court first considers, as it is under RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1). To be sure, it is a change in the common law; but it is a change that protects, where practicable, the property rights of the easement holder. In this regard, it is consistent with the *AKG* court's reasoning for rejecting § 7.10(2). That subsection, with a lower threshold than § 7.10(1) for modifying an easement, does not sufficiently protect the property rights of the easement holder. *See, e.g., AKG*, 296 Wis. 2d 1, ¶ 39 ("We are not persuaded that the policy arguments are sufficiently compelling to justify overturning more than a century of precedent and upsetting the settled expectations of

thousands of easement holders."). At the same time, we see no unfairness to the landowner in § 7.10(1). Indeed, a court may be more likely to grant relief to the landowner, given the option of a remedy less drastic than termination.

■■

¶ 37. We recognize, as the comment to § 7.10 suggests, that courts should be cautious about either modifying or terminating an easement on the ground of impossibility. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.10, cmt. a. at 395. It would be undesirable to give a broad interpretation to the phrase "impossible as a practical matter to accomplish the purpose for which the [easement] was created." § 7.10(1). In this case the parties agree that the primary purpose of both easements was for the building and use of a driveway giving access to lot 120 and to the eastern parcel of lot 121. They also agree that, because of the new wetland delineation, that purpose cannot be fulfilled with the existing easements. We are satisfied that these facts come within the proper scope of § 7.10.

¶ 38. We find the flexibility given a circuit court in RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) to be particularly appropriate in this case because of the nature of the access easement agreements. Harmony Homes is the landowner under the Lot 120 Agreement and the easement holder under the Lot 121 Agreement, and the Mnuks' position under each agreement is reversed. The Mnuks seek a modification, rather than termination, of the easement granted them under the Lot 120 Agreement and a modification, rather than termination, of the easement it has granted under the Lot 121 Agreement. Harmony Homes' position is that it wants both easements terminated. However, Harmony Homes would thereby be released from its obligation to

pay for the driveway and its maintenance, a benefit for which the Mnuks presumably bargained. In these circumstances, there is a sound basis for affording the circuit court the authority to examine the practicality and fairness of modifying rather than terminating the easements.

¶ 39.   In applying RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) to this case, we emphasize that the rule provides that a court *may* modify or *may* terminate an easement under the conditions specified. Whether to do either, and how to modify if the court decides upon that remedy, is within the discretion of the circuit court. In this case, it appears that neither party wishes the easements to remain valid and unmodified. If this is correct, then on remand the court will be exercising its discretion in deciding whether to modify or terminate the easements.

¶ 40.   We do not provide a definitive list of factors for the circuit court to consider in making this determination, but based on the parties' arguments, we comment on a few. One important factor is whether it is practicable to relocate the easements to avoid the wetlands. Another is how much additional land of each of the parties will be required to do that, if it is possible. Harmony Homes asserts that the Mnuks can have access to their eastern parcel over the "pole" of their land and do not need an easement on Harmony Homes' lot for that purpose. The court will need to determine if that is true and, if it is true, how that affects the analysis. Harmony Homes' existing financial obligation for building and maintaining the driveway also needs to be considered. As already noted, this is a benefit to the Mnuks for which they have presumably bargained and which will be lost to them if the easements are termi-

nated. On the other hand, if the easements are relocated, it may cost more to build the driveways and any such additional expenses for Harmony Homes must also be considered. In this regard we note that the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) specifically provides that "[c]ompensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the [easement]." Finally, it may be relevant to consider why the more recent wetlands delineation does not permit a driveway on the easements when the location of the easements purportedly took into account the wetlands.

## CONCLUSION

¶ 41. We affirm the circuit court's ruling that the six-year statute of limitations does not bar the Mnuks' claims for a modification of the easements and for a declaratory ruling on Harmony Homes' obligations under the easement agreements. We also affirm, although on different grounds, the court's conclusion that it has the authority to modify the easements. We remand to the circuit court so that it can exercise its discretion in applying RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) to determine whether to modify the easements or terminate them and whether to award compensation to either party.

*By the Court.*—Order affirmed and cause remanded with instructions.