Ronald M. BERG, Plaintiff-Appellant,

v.

Thomas R. ZIEL and Shawn A. Newhouse,
Defendants-Respondents.

Court of Appeals

*No. 2014AP2802. Submitted on briefs May 26, 2015.
—Decided August 25, 2015.*

2015 WI App 72

(Also reported in 870 N.W.2d 666.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Catherine R. Munkittrick* of *Rodli, Beskar, Neuhaus, Murray & Pletcher, S.C.*, River Falls.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Terry L. Moore*, and *Stephanie L. Finn* of *Herrick & Hart, S.C.*, Eau Claire.

Before Stark, P.J., Hruz, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J.    Ronald Berg appeals a judgment concerning a recorded general easement over property owned by Thomas Ziel and Shawn Newhouse (collectively, Ziel). The judgment extinguished Berg's existing access route, but granted Berg access on a newly

created road along the edge of Ziel's property. Berg argues prior landowners had selected the location of the general easement decades ago, thereby establishing the location of his easement. We agree with Berg and reverse and remand with directions.

## BACKGROUND

¶ 2. The parties are neighboring landowners, each owning property in section 13 in Trempealeau County, east of County Highway O. Ziel's property abuts Highway O on the western side, while Berg's property is beyond Ziel's land to the east.[1] Berg's property does not abut any public roadway, but an existing private road serves his property across Ziel's property.

¶ 3. Years ago, Ziel's and Berg's properties were held by one owner, Howard Hammer. At a bench trial in this case, Hammer testified he grew up near the parties' land in the 1940s, although his specific memories of the property went back to "probably in the early '60s, due to the fact that at one time Whitehall Packing Plant owned that property." Hammer purchased the land from Whitehall in the late 1960s. Hammer recalled that Whitehall used the existing road to access what is now Berg's property, where Whitehall dumped waste, and that, "I can never not [sic] remember that being a road." Further, he explained, "[A]nd after that I owned it and that road has always been used as a road, a field road or a road to get back there."

¶ 4. Hammer explained that he later sold the back portion of his property—what is now Berg's property—to Stanley Campbell in 1977. As part of the

[1] Each party's property consists of several adjoining parcels.

sale agreement, Campbell required Hammer to lay shale rock over the existing road. The publicly recorded deed from Hammer to Campbell was the first to identify any easement.[2] It conveyed the following property:

> The East 1/2 of the Northeast 1/4, and The East 1/2 of the West 1/2 of the Northeast 1/4 of Section 13 . . . .
>
> Together with a right of way for ingress and egress for vehicular traffic from the public road passing through . . . Section 13, through and over the Northwest 1/4 and the Northeast 1/4 of . . . Section 13 to the above described parcel.

¶ 5.  Campbell also testified. He explained:

> [T]here was an existing easement into that property across that field and . . . [Hammer] went ahead and

---

[2] Hammer had already sold the front portion of his property—now Ziel's property—to Arthur Conti in 1974. Thus, the precise origin of the easement right is somewhat unclear. Hammer testified that Conti told him the access to the back property would remain in its current location on the existing road. However, the timing of the conversation is unclear from Hammer's testimony. Addressing the deed to Campbell, Hammer testified on cross-examination: "Actually, to be as—as correct as I can about this is I think this is Campbell overstating what was actually there because I had actually got, well, I would call it prescriptive egress from the prior owner to myself and already had . . . the hard surface road on . . . ." Hammer further testified, "Art Conti granted me the easement because he owned it, if I'm correct, . . . but it's my recollection, I can remember actually asking him and him describing right where it's going to go." Finally, Hammer responded, "Correct[,]" when asked, "So when you sold land to Conti, though, you made sure you were able to keep an easement to get back to your land that you were keeping, correct?" In any event, Ziel does not dispute the validity of the general easement first identified in the deed from Hammer to Campbell.

put in more of an old weathered road. Prior to that it was just essentially a farm dirt track, brought in shale and leveled it out and put in an all weathered road prior to our purchase.

When asked whether he had any discussions about putting an access road in a different location, Campbell replied, "No, no, that was the location that was chosen, seemed the most optimal at the time and that's where he put it and it worked out fine, of course." Campbell built a cabin on his property the same year he purchased it. He owned the property for approximately twenty-five years. Campbell testified that nobody ever raised any issues about the existing access road during his ownership, explaining, "It was there and it was used and there was an easement . . . ."

¶ 6. Campbell sold his property to Steven Schaefer in 2002. The publicly recorded deed narrowed the scope of the general easement described in the previous deed, but left the description general. It stated:

Tract I: The E 1/2 of NE 1/4, and the E 1/2 of W 1/2 of NE 1/4 of Section 13–23–8 West.

Tract II: A non-exclusive easement for the benefit of Tract 1, being a right of way for ingress and egress for vehicular traffic, created by deed from Howard Hammer and Colleen Hammer, as his wife, and in her own individual right to Stanley Campbell, by instrument dated July 9, 1977, and recorded on September 8, 1977, in Vol. 239 Rec., page 173, as Doc. No. 219115, from the public highway passing through . . . Section 13, through and over the N 1/2 of NW 1/4 of Section 13–23–8 West, and over the W 1/2 of NW 1/4 of NE 1/4 of Section 13–23–8 West.

Essentially, the description of the easement narrowed its potential location from 320 acres (two quarter-

sections) to 100 acres (80 acres in one quarter-section, plus 20 acres in the other quarter-section). Like the prior deed describing the easement, the new easement description included the entire existing road.

¶ 7.  Schaefer testified he owned the property for approximately two years. He used the existing road to access the cabin and for logging purposes, testifying, "I'm guessing tens of truckloads were taken out." Schaefer also stated:

> I guess I bought the property with the understanding that there was an easement that I could use to get to the property and I sold—it was my intention to sell everything that I had received, you know, the access and, you know, everything that I purchased with—I intended to sell.

However, when Schaefer sold his property to Berg in May 2004, the general easement description omitted specific description of any land in the NW 1/4 of section 13.

¶ 8.  The publicly recorded deed from Schaefer to Berg described the following property:

> Tract I:   The East 1/2 of the NE 1/4, and the East 1/2 of the West 1/2 of the NE 1/4 of Section 13 . . . .

> Tract II:   A non-exclusive easement for the benefit of Tract I, being a right of way for ingress and egress for vehicular traffic, created by deed from Howard Hammer and Colleen Hammer, as his wife, and in her own individual right to Stanley Campbell, by instrument dated July 9, 1977, and recorded on September 8, 1977, in Volume 239 Records, Page 173, as Document No. 219115, from the Public highway passing through . . . Section 13, through and over the West 1/2 of NW 1/4 of NE 1/4 of Section 13 . . . .

Thus, of the three individual parcels of Ziel's property

that the existing road traversed, the locations of the two parcels closest to Highway O were not explicitly listed in Berg's deed.[3] However, on the day of trial in March 2014, Schaefer signed a quit claim deed with an easement description that included the property description that was omitted from the 2004 deed; i.e., land located in the NW 1/4 of section 13.

¶ 9.  Berg testified he used the existing road to access his property and nobody questioned his use until Ziel did so in 2010. Ziel had purchased the property abutting Highway O in 2006. Ziel partially constructed a new road along the northern border of his property, and desired that to be the access for Berg's property. At trial, Berg presented an estimate indicating it would cost about $35,800 to construct a new driveway on his own land to connect to the new road on Ziel's property.

¶ 10.  Following Berg's presentation of his case at the bench trial, Ziel moved to dismiss based on various arguments—none of which the court appears to have accepted. Following an informal offer of proof from Ziel's counsel and substantial argument, the court held as follows:

> I'm going to rule that based on my interpretation of these deeds, the intent was to give an easement all the time, so going back to Hammer. The issue became when Berg got it they didn't include it properly, but they intended to include it, but it just says an easement over their land, doesn't say where it is. So I think the—where it still probably doesn't seem too fair to Mr.

---

[3] Ziel owns an 8.5–acre parcel abutting Highway O, a 40–acre parcel east of that, and then a 20–acre parcel east of that. The 8.5 and 40–acre parcels are in the NW 1/4 of section 13, while the 20–acre parcel is located in the NE 1/4 of section 13.

Berg, I think . . .—even though they've been using this road on the south the whole time, I think it can be anywhere on the property and so—because they didn't designate it, and this is almost more of a settlement, I'll accept [Ziel's attorney's] proposal here that the north driveway . . . that's just been built, I'll grant Mr. Berg an easement [there] . . . .

¶ 11. Additionally, the court issued a written decision, which included the following findings of fact:

In 1977, Howard Hammer installed a road (the existing road) and conveyed Tract I to Stanley Campbell along with [the easement described in the relative deed].

. . . .

[Ziel] had notice of the road that [Berg] had used to access his land prior to purchasing their real estate, but had no notice of any written recorded easement claimed by [Berg].[4]

. . . .

The existing road has been the only road used for ingress and egress for the benefit of Tract I since 1977.

The intent of Campbell and Schaefer was to provide an easement over Tract II including the area of the existing road.

(Formatting modified.) Ultimately, consistent with the court's oral ruling, the judgment granted Berg an easement in the new location proposed by Ziel. Berg appeals.

---

[4] These findings regarding notice are not supported by any evidence; rather, they rely upon Ziel's attorney's offer of proof.

## DISCUSSION

¶ 12.   Berg argues that the historical deeds to his property entitle him to an easement in the location of the existing road and that Ziel had actual notice of the easement based on use and, regardless, is deemed to have notice based on the properly recorded deeds.

¶ 13.   An easement is an interest in property that is in another's possession. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997). "An easement creates two distinct property interests: the dominant estate and the servient estate." *Richards v. Land Star Group, Inc.*, 224 Wis. 2d 829, 836, 593 N.W.2d 103 (Ct. App. 1999). The dominant estate enjoys the privileges of an easement, while the servient estate—the property burdened by the easement— permits the dominant estate to exercise those privileges. *Id.*

¶ 14.   The easements in this case are express easements—easements created by written grant in a deed. *See Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶ 24, 329 Wis. 2d 182, 790 N.W.2d 514. We construe the deed granting an easement as we do other written instruments, and the purpose is to ascertain the parties' intent. *Id.* We review the easement's language to determine the parties' intent and, if that is unambiguous, we apply that language. *Id.* If there is an ambiguity, the court may consider extrinsic evidence, but the purpose remains that of determining the parties' intent at the time of the grant. *Id.*; *see also Joseph Mann Library Ass'n v. City of Two Rivers*, 272 Wis. 441, 446, 76 N.W.2d 388 (1956) (Deeds "speak as of the time of execution and delivery."). Further, where a deed is ambiguous, "the practical construction given to it by the acts of the parties is of great force in

determining its construction." *Joseph Mann*, 272 Wis. at 446. The " 'longstanding default rule in Wisconsin [is] that a servient estate [the landowner] cannot unilaterally relocate or terminate an express easement' . . . ." *Mnuk*, 329 Wis. 2d 182, ¶ 30 (quoting *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, 296 Wis. 2d 1, 717 N.W.2d 835) (second bracket in *Mnuk*). Interpretation of a deed presents a question of law. *Atkinson*, 211 Wis. 2d at 638.

¶ 15.    At trial, Berg relied entirely on the following law, set forth in his written trial statement:

> "It is well settled that if the location of a right of way is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land. . . . If a location is not selected by either the servient or the dominant owner and they cannot agree upon a location, a court of equity has the power affirmatively and specifically to determine the location of the servitude. The reasonable convenience of both parties is of prime importance and the court cannot act arbitrarily, but must proceed with due regard for the rights of both parties."

*Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 416–17, 141 N.W.2d 306 (1966) (quoting 17A AM. JUR. *Easements* § 101; citing §§ 119–125 (1957)).[5] Although the trial court referenced no legal authority in its oral

---

[5] The revised version of the treatise similarly provides:

In the case of a grant of an undefined easement . . ., if the parties cannot agree, equity determines the location of the way. The location of an undefined easement must be reasonable to both the dominant and servient estates, considering the condition of the place, the purpose for which it was intended, and the acts of the grantee.

. . . .

or written decisions, it appears this language was likely the basis of the trial court's equitable ruling. Berg, however, renews his argument that the easement's location had already been selected by one or more parties. He contends the court therefore lacked authority to set a new location.

¶ 16. The quoted "if-then" treatise language in *Werkowski* strongly implies that if either the servient or dominant owner *has* already selected an easement location, a court then has no equitable power to subsequently determine the location. Consideration of surrounding text from that treatise confirms as much. The current version of the treatise—which is consistent with the legal principles cited above, *supra*, ¶ 14 —provides:

> If the easement is reserved in the deed in general terms only, an ambiguity regarding the location of the easement exists, and the court looks to the surrounding circumstances, including subsequent agreements and the conduct of the parties, which may evidence the parties' intent.
>
> The location of the easement depends upon the intention of the parties and the circumstances in existence at the time the easement was given and carried out.
>
> . . . .
>
> When a grant does not specify the location, an existing access can establish its location.
>
> . . . .

Where the grant does not provide the location of an easement, neither party exercises a right to locate it, and the parties are unable to agree on a location, the court may fix its location.

25 AM. JUR. 2D *Easements and licenses in real property* §§ 55, 57 (2014) (footnotes omitted).

When an easement is granted without defined limits . . ., the location may be subsequently fixed by an express agreement of the parties or by an implied agreement arising out of the use of the easement by the grantee and acquiescence on the part of the grantor provided the way is located within the boundaries of the land over which the right is granted. The location thus determined will have the same legal effect as though it had been fully described by the terms of the grant.

> **Observation:** Once the location of an expressly deeded easement is established, whether by the language of the instrument creating the easement or by subsequent acts of the parties fixing on the ground the location of a general grant of easement, the site location may not be changed thereafter by either the owner of the dominant estate or the owner of the servient estate . . . .

25 AM. JUR. 2D *Easements and licenses in real property* §§ 54–56 (2014) (footnotes omitted).

¶ 17. We agree with Berg that, pursuant to *Werkowski*, the trial court could not relocate the easement from the established access road. The first deed to memorialize the easement was, curiously, from an owner of the dominant estate, Howard Hammer. Hammer testified the owner of the servient estate, Arthur Conti, had agreed that the easement's location would be the existing road. When Hammer sold to Campbell, Campbell required Hammer to lay rock on the existing road. Campbell testified the existing road "was the location that was chosen" to access his property. He stated he built a cabin and then used the existing access road for twenty-five years. Campbell then sold the land to Schaefer, who sold the land to Berg.

¶ 18. Aside from the undisputed trial testimony, the trial court found that both Campbell and then Schaefer intended to convey an easement in the loca-

tion of the existing road. The court further found that the existing road was "the only road used for ingress and egress" to Berg's land since 1977, which was when the land was conveyed from Hammer to Campbell. Notably, all three deeds referencing the easement provided that it was "a right of way for ingress and egress for vehicular traffic."

¶ 19. Under any reasonable view of the evidence, an owner of either the dominant or servient estate had selected the existing access road as the easement's location at the time Campbell purchased his property in 1977. That fact alone establishes the easement's location. *See Werkowski*, 30 Wis. 2d at 416–17. Alternatively, the easement's location was conclusively determined by Campbell's twenty-five-year use of the existing road to access his property by vehicle. *See* 25 AM. JUR. 2D *Easements and licenses in real property* §§ 54–56 (2014) ("[T]he location [of a general easement] may be subsequently fixed . . . by an implied agreement arising out of the use of the easement by the grantee . . . .").

¶ 20. Alternatively, the undisputed facts demonstrate that the intent of the first deed memorializing the easement was that the existing road would be the location of the easement. Indeed, this intent would have been so obvious at the time the deed was drafted that it is not surprising that a specific location was not set forth. There was only one public road in section 13, so there is no dispute as to what public road the deed referred to. There was also only one existing road leading from the public road to the dominant estate. Thus, it was the only location that could provide vehicular ingress and egress. *See* 25 AM. JUR. 2D *Easements and licenses in real property* § 54 (2014) ("The location of the easement depends upon the intention of

the parties and the circumstances in existence at the time the easement was given and carried out."). Hammer, the property seller vis-à–vis the first deed memorializing the easement, testified he grew up nearby and the existing access road had been there for as long as he could remember. *See id.*, § 55 ("When a grant does not specify the location, an existing access can establish its location."). When he conveyed the dominant estate and easement to Campbell, Hammer fortified the existing access road with shale rock. *See Joseph Mann*, 272 Wis. at 446 (parties' acts inform construction of ambiguous deed). Every owner of the dominant estate thereafter used the existing road to access the dominant estate from 1977 until Ziel objected in 2010. *See id.* These undisputed facts conclusively demonstrate the intent of the 1977 deed was that the easement would be specifically located on the existing access road.[6]

¶ 21.   We have concluded the easement's location —like the access road itself—was long ago set in stone. We therefore address Ziel's argument that he lacked notice of the easement due to its partial omission from Berg's deed to the dominant estate. In his written trial statement, Ziel suggested he lacked notice of the easement because Berg's deed was issued prior to Ziel's purchase of the servient estate. At trial, his attorney repeatedly asserted Ziel had no notice that there was a documented easement and further as-

---

[6] Ziel cites and discusses an unpublished per curiam decision, in violation of Wis. Stat. Rule 809.23(3)(b). Berg also cites and discusses the per curiam decision, so as to refute Ziel's argument. This is not permitted by the rule; Berg should have moved to strike the offending portion of Ziel's brief. Ziel's and Berg's counsel are advised that future rules violations will likely result in sanctions. *See* Wis. Stat. Rule 809.83(2).

serted Ziel's title insurance policy did not list the easement. However, because the court ruled following the close of Berg's case-in-chief, Ziel never testified or offered any exhibits in support of his claimed lack of notice.

¶ 22. We need not remand to determine whether Ziel lacked notice or is entitled to any defense or remedy therefrom, because we conclude Ziel is deemed to have notice of Berg's easement as a matter of law. Ziel provided no legal authority to the trial court in support of his lack-of-notice argument. In his motion for reconsideration, Berg cited—for the first time— WIS. STAT. § 706.09, titled, "Notice of conveyance from the record."[7] On appeal, Ziel and Berg both discuss notice and § 706.09.

¶ 23. "The term 'chain of title' . . . includes instruments, actions and proceedings discoverable by reasonable search of the public records and indexes affecting real estate in the offices of the register of deeds and in probate and of clerks of courts . . . ." WIS. STAT. § 706.09(4).

> A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:
>
> . . . .
>
> (b) . . . There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest . . . .

---

[7] Ziel did not respond to Berg's motion for reconsideration, and the trial court never acted on it.

Section 706.09(2), (2)(b).

¶ 24. As an initial matter, we reject Ziel's argument that Berg's deed was defective as to the easement because it omitted reference to a portion of Ziel's servient estate. Berg's deed described an easement to the public highway; thus the easement necessarily had to cross that omitted portion of Ziel's land abutting the highway. More importantly, Berg's deed explicitly incorporated the original easement created in the 1977 deed from Hammer to Campbell, and identified that deed's document number and location in the public record. No reasonable person could interpret Berg's deed as conveying an easement different than that described in the 1977 deed.[8]

¶ 25. We also reject Ziel's argument that he could not be deemed to have notice of the easement pursuant to WIS. STAT. § 706.09(2)(b). Ziel does not dispute that there was one or more properly recorded deeds that satisfied the statutory requirement; indeed, he ignores the two deeds preceding Berg's. Rather, Ziel only argues paragraph (2)(b) does not apply because the trial court found Berg did not have a recorded easement. That argument fails for multiple reasons. First and foremost, Ziel misconstrues

---

[8] Ziel further contends that the exceptions-to-warranty clause of Berg's warranty deed somehow extinguished that portion of the easement over the land that was inadvertently omitted from the description. The clause provided: "**Exceptions to warranties**: Easements, covenants, zoning and restrictions of record, though no republication is intended herein. General taxes for the year 2004." This argument is absurd; we only address it in the interest of completeness. Like most warranty deeds, including the previous deeds transferring the Berg property, the exceptions clause merely—and clearly—excludes any warranty that the dominant estate itself is free of encumbrances such as easements.

the underlying "finding of fact"—which probably should have been identified as a conclusion of law—that Berg's "deed did not describe an easement that would have allowed [Berg] to access his land from County Highway O." The court did not find, and could not have reasonably found, that Berg's recorded deed did not describe *any* easement. Additionally, we have already determined that Berg's deed clearly and unambiguously conveyed the same easement that was described in the original 1977 Hammer to Campbell deed.

¶ 26.  Furthermore, regardless of Berg's deed, the 1977 Hammer-to-Campbell deed and the 2002 Campbell-to-Schaefer deed were recorded within thirty years of Ziel's 2006 acquisition of the servient estate. Both deeds memorialized an easement across all of Ziel's land crossed by the existing road. Ziel therefore cannot argue he lacked notice of any written recorded easement.[9] *See* WIS. STAT. § 706.09(2)(b). Ziel concedes as much by failing to respond to Berg's argument based on those deeds. *See Charolais Breeding Ranches, Ltd. v. FPC Secs . Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶ 27.  On remand the trial court shall grant Berg a specific easement in the location of the existing access road.

---

[9] In the absence of any assertion to the contrary, we assume that the historical deeds to Berg's property that conveyed the easement were referenced in Ziel's chain of title. Indeed, this fact is implicit in Ziel's argument—here and in the trial court—that he lacked notice because Berg's deed omitting part of the prior easement description was recorded prior to Ziel's purchase.

*By the Court.*—Judgment reversed and cause remanded with directions.