COURT OF APPEALS
DECISION
DATED AND FILED

October 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP396**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV17**

**IN COURT OF APPEALS
DISTRICT III**

ARVO EILAU AND JOYCE DZIK,

    PLAINTIFFS-RESPONDENTS,

V.

DENNIS ROFF,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Florence County: LEON D. STENZ, Judge. *Affirmed in part and reversed in part.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Dennis Roff appeals from an order declaring as ambiguous an easement for ingress and egress over his property to permit Arvo Eilau and Joyce Dzik (collectively, "Eilau") access to an island they own that is located offshore from Roff's property. In addition to challenging the circuit court's

conclusion regarding ambiguity, Roff argues that the court made clearly erroneous factual findings surrounding the historical use of the easement when it ruled that the intent of the easement was to allow the owners of an island to drive vehicles across the entirety of his property to a boat dock and to park for an unspecified period of time. Roff further argues the court erred by ordering that Eilau can install gravel on the easement.

¶2 We agree with Roff that the easement is unambiguous. We further conclude that the text of the easement provides for Eilau's vehicular traffic across Roff's property to the boat dock. It does not, however, permit parking at the boat dock. Applying general easement principles, we also conclude that the easement permits Eilau to turn vehicles around at the boat dock, and that Eilau is responsible for part of the easement's maintenance, but that Eilau cannot install gravel on the easement without unreasonably burdening Roff. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

¶3 Eagle Island, a true island, sits roughly between Bass Lake and Middle Lake, two lakes on the Spread Eagle Chain of Lakes. To the east of Eagle Island is a shoreline and then a public road. The road, Carpenter Road, runs largely parallel to the north and south of Bass Lake and Middle Lake. Running north between the shoreline and Carpenter Road are six lots of land—Lots 49 through 54.

¶4 Long before the dispute in this case, Robert Hubbard owned at least five relevant parcels of land—Eagle Island and Lots 49, 50, 51, and 52. In 1955, Hubbard conveyed Eagle Island by warranty deed (the 1955 Deed) to individuals who are not parties to this case. The 1955 Deed contained the following language creating an easement ("Easement") over Lot 49:

Also, hereby granting to the said second parties, their heirs or assigns, an easement for ingress and egress to and from the above described Eagle Island over any road now situated on lot Forty-nine (49) of Point Patten Plat, Spread Eagle, or over any road hereafter constructed on said lot Forty-nine (49); reserving however, to the said first parties, their heirs or assigns, the right ay [sic] any time hereafter, or from time to time, to change the location of any road of said lot Forty-nine (49); and also granting to the said second parties, their heirs or assigns, the right to construct a boat dock or landing of said lot forty-nine (49) at a location approved by the said first parties, their heirs or assigns, and the right to use the same for landing boats and for ingress an egress to and from the said Eagle Island above described.

¶5 It is undisputed that the Easement runs from Carpenter Road, over Lot 49, to Bass Lake. It consists of a dirt "roadway"[1] that starts at Carpenter Road on Lot 49 and ends roughly 100 feet from Bass Lake, near a cottage ("Birch Cottage").[2] At the end of the roadway are two posts with a removable, sliding pipe between them ("Barrier"). Beyond the Barrier, the Easement consists of a "lawn"[3] until it reaches Bass Lake, at which point there is a boat dock. There are also a small number of parking spaces next to Birch Cottage.

¶6 Of relevance to this appeal, in 1978, Lots 49, 50, 51, and 52 were conveyed by warranty deed to Roff's corporation, Green Bay Entertainment Center,

---

[1] At the circuit court level, the "roadway" was also referred to as, among other things, a "driveway" and a "road." For consistency, unless referencing the record, we will refer to it as a "roadway," but we do not attach any legal meaning to the description by doing so.

[2] Birch Cottage is a vacation rental cabin. Surrounding Birch Cottage are three smaller rental cabins. Hence, Birch Cottage was often referred to as the "big cabin" or the "big cottage" during the trial. Since 1978, Roff has operated a cottage rental business on Lot 49.

[3] The circuit court characterized the area as a "lawn," and we will refer to it as the same.

Inc. The lots were eventually conveyed to Roff himself in 1988. In 2015, Eagle Island and parts of Lots 53 and 54 were conveyed by trustee's deed[4] to Eilau.

¶7 The current dispute began shortly after Eilau purchased Eagle Island and parts of Lots 53 and 54. Following Eilau driving vehicles beyond the Barrier and temporarily parking them on the lawn, Eilau claimed that Roff responded by intentionally "placing large objects across the Easement" and by "harassing and accosting [Eilau] about [using] … the Easement, and not allowing [Eilau] to use the full length of the Easement." Eilau filed the present action against Roff in 2019. Eilau sought declaratory relief setting forth the parties' rights and obligations with respect to the Easement, as well as injunctive relief requiring Roff to cease interfering with Eilau's use of the Easement, including Eilau's right to "drive on" and "park vehicles" on the Easement. Roff responded by arguing, among other things, that the Easement is unambiguous as to its terms. Roff therefore sought relief "declaring that [Eilau's] use of the [E]asement is limited to the unambiguous purposes set forth therein."

---

[4] The 2015 trustee's deed did not contain the entire language concerning the Easement from the 1955 Deed. Instead, it provided: "Also an easement for ingress and egress to and from the above described Eagle Island over any road now situated on Lot 49…." It also stated that the 2015 trustee's deed was:

> subject to, conditioned upon and limited by … [t]he location, nature and extent of use by Grantees and others of the easement pertaining to [Eagle Island] and obligations concerning maintenance thereof or any loss, damage or liability resulting from the existing road(s) traversing lands not a part of said easement, as evidenced [by the 1955 Deed].

It appears that, on appeal, both parties agree that the current Easement over Lot 49 for ingress and egress to Eagle Island is controlled by the language in the 1955 Deed. To the extent the parties do not agree on the controlling language, both parties abandoned any argument to the contrary by not raising it on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

¶8     The case eventually proceeded to a bench trial.  Prior to the start of the trial testimony, the circuit court visited the Easement with the parties. Afterward, the parties testified themselves and called their respective witnesses.

¶9     The circuit court ultimately determined that the Easement was ambiguous.  After making factual findings regarding the Easement's historical use, the court orally concluded that Eilau is not "responsible for maintaining the driveway as it is now from [Carpenter R]oad to [Birch Cottage]…. You wanted a maintenance type of agreement.  I don't know if I need to do that.  Um, apparently, Mr. Roff is responsible for the maintenance of that.  It is for his property."  Further, the court stated that any maintenance for the portion of the Easement beyond the Barrier "may be the responsibility of [Eilau]."

¶10    Thereafter, the circuit court issued a written ruling, stating that Eilau

> shall have the right to maintain and improve the existing Lot 49 [E]asement road and dock, or any newly constructed road designated by Roff, including installation of gravel and removing obstructions which in any way impair their peaceful, lawful, broad legal use of the [E]asement road.
>
> ….
>
> [Eilau] shall have the right to leave vehicles on the [E]asement while they are at the island.  [Eilau] shall have the right to park on the easement, turn vehicles, and drive from Carpenter Road to the dock.  [Eilau] shall have the right to park a reasonable number of vehicles on the Lot 49 [E]asement road at the dock in a manner that such use does not impose an undue burden on the servient estate.

The written order also stated that Eilau may install gravel all the way to the boat dock. Roff now appeals.[5]

## DISCUSSION

¶11    This case calls upon us to interpret a deed of easement[6] to determine if an easement is ambiguous, which is a question of law that we review de novo. *See* ***Konneker v. Romano***, 2010 WI 65, ¶23, 326 Wis. 2d 268, 785 N.W.2d 432. "However, if the language of [a] deed is ambiguous, then the intent behind the language presents a question of fact." ***Id.***; *see also* WIS. STAT. § 805.17(2) (2019-20)[7] ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

¶12    In addition to governance by granting documents, express easements are also governed by principles that apply to all easements unless the principles "conflict with the express terms" in the granting document. *See* ***Grygiel v. Monches Fish & Game Club, Inc.***, 2010 WI 93, ¶18, 328 Wis. 2d 436, 787 N.W.2d 6 (citing

---

[5] We note that Roff challenges only the circuit court's rulings that: (1) the Easement is ambiguous; (2) Eilau can travel by vehicle all the way to Bass Lake; (3) Eilau can park vehicles on the Easement; and (4) Eilau can install gravel all the way to the boat dock.

Roff does not challenge the circuit court's other rulings, including that: (1) Roff is responsible for the maintenance of the Easement from Carpenter Road to the Barrier; and (2) Eilau can remove Roff's pipe Barrier if it is unreasonably interfering with the use of the Easement. Accordingly, we do not address those rulings.

[6] "A deed of easement is a document that contains the terms of a written easement." ***Garza v. American Transmission Co.***, 2017 WI 35, ¶24 n.10, 374 Wis. 2d 555, 893 N.W.2d 1. A deed of easement is also sometimes referred to as an express easement. *See* ***Berg v. Ziel***, 2015 WI App 72, ¶14, 365 Wis. 2d 131, 870 N.W.2d 666. We use the terms interchangeably throughout this opinion.

[7] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

RESTATEMENT (THIRD) OF PROP.: SERVITUDES §§ 4.8, 4.11 (AM. L. INST. 2000)). Our application of general easement principles to an easement is de novo and "without deference to the [circuit] court's determination[s]." *See **Hunter v. Keys***, 229 Wis. 2d 710, 714-15, 600 N.W.2d 269 (Ct. App. 1999); *see also **Bohm v. Leiber***, 2020 WI App 52, ¶15, 393 Wis. 2d 757, 948 N.W.2d 370 ("The meaning and scope of an easement is a question of law we review de novo.").

## I.  General principles of easement law

¶13    "An easement 'is a permanent interest in another's land, with a right to enjoy it fully and without obstruction.'" ***Konneker***, 326 Wis. 2d 268, ¶25 (citation omitted).  "It is a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the land." ***AKG Real Est., LLC v. Kosterman***, 2006 WI 106, ¶2, 296 Wis. 2d 1, 717 N.W.2d 835.  An appurtenant[8] easement, like the Easement in this case, creates two property interests: The dominant estate—in this case owned by Eilau—"which enjoys the privileges as to other land granted by an easement," and the servient estate—in this case owned by Roff—"which permits the exercise of those privileges." *See **id.***, ¶3.  "The dominant estate holder's 'use of the easement must be in accordance with and confined to the terms and purposes of the grant.'" ***Garza v. American Transmission Co.***, 2017 WI 35, ¶23, 374 Wis. 2d 555, 893 N.W.2d 1 (citation omitted).

¶14    In the absence of directions in an easement to the contrary, easements are governed by several general principles.  First, an easement cannot be enlarged by the dominant estate. ***Gojmerac v. Mahn***, 2002 WI App 22, ¶23, 250 Wis. 2d 1, 640 N.W.2d 178 (2001) (enlarging an easement refers to extending it to other

---

[8] An appurtenant easement "means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land." ***Gojmerac v. Mahn***, 2002 WI App 22, ¶18, 250 Wis. 2d 1, 640 N.W.2d 178 (2001).

property not intended to be covered by the granting document). Second, the dominant estate is granted "all rights that are incident or necessary to the reasonable and proper enjoyment of the easement." *Keys*, 229 Wis. 2d at 715. As such, "the servient estate may not intrude into the easement in such a way as to interfere with the dominant estate's easement rights." *Id.* at 716. Third, the dominant estate "may make changes in [an] easement for the purpose specified in [a] grant as long as the changes are reasonably related to the easement holder's right and do not unreasonably burden the servient estate." *Id.* at 715 (citation omitted). Lastly, "[a]bsent an agreement to the contrary, the [dominant estate] must repair the easement." *Shanak v. City of Waupaca*, 185 Wis. 2d 568, 584, 518 N.W.2d 310 (Ct. App. 1994); *Koch v. Hustis*, 113 Wis. 599, 604, 87 N.W. 834 (1901) (stating the "owner of an easement upon another's land is bound to make all necessary repairs").[9]

## II. Application of easement principles

¶15 A written instrument is ambiguous when it "is susceptible to more than one reasonable interpretation." *Konneker*, 326 Wis. 2d 268, ¶26. As stated previously, the 1955 Deed granted the Easement in this case, and therefore we "must

---

[9] We note that

> [w]hen the owner of the servient estate and the beneficiary of an easement … both make the use of the servient estate that is authorized by the easement …, they are both liable to contribute to the costs reasonably incurred for repair and maintenance of the portion of the servient estate and the improvements they use in common.

RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.13(d) (AM. L. INST. 2000). Again, Roff does not challenge the circuit court's order requiring him to maintain the portion of the Easement from Carpenter Road to the Barrier, *see supra* n.5, and we will therefore not address that particular area of maintenance.

look to that instrument in construing the relative rights of the landowners." *See id.* (quoting ***Hunter v. McDonald***, 78 Wis. 2d 338, 342-43, 254 N.W.2d 282 (1977)).

¶16    When interpreting a deed of easement, "the purpose of the court is to ascertain the intention of the parties" who drafted the deed. ***Id.*** (citation omitted). "The primary source of the parties' intent is what is written within the four corners of the deed." ***Id.*** In interpreting the intent of the drafters, we will consider extrinsic evidence only if a deed of easement is ambiguous. *See **id.***

A. <u>The Easement unambiguously grants Eilau ingress and egress over Roff's property to access Eagle Island</u>.

¶17    On appeal, Eilau contends that the Easement is ambiguous, in part, because it is silent as to its "length, width, direction, location, [and] lack of survey." Roff argues that "the intent of the parties is unambiguously found within the Easement's express language:  to allow the owners of Eagle Island a path for ingress and egress to Eagle Island." We agree with Roff that the Easement is unambiguous regarding the right to ingress and egress. As we will explain, an easement is not necessarily ambiguous by virtue of its dimensional silence.

¶18    Pursuant to the terms of the 1955 Deed, the Easement provides, in pertinent part, for "ingress and egress to and from the above described Eagle Island over any road now situated." "Ingress and egress" is defined as "[t]he right to use land to enter and leave another's property." *Ingress and egress easement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶19    It therefore cannot be argued, and neither party does on appeal, that the "road" referenced in the Easement ends where the "roadway" ends (i.e., at the Barrier). Such an interpretation would be contrary to both the legal definition of "ingress and egress easement" and to the intent of the Easement's drafters, who

9

provided for "ingress and egress to and from" Eagle Island. If the "road" referenced in the Easement ended at the Barrier, there would be no ingress and egress to the island because the Barrier is located 100 feet from Bass Lake.

¶20 Therefore, the text of the Easement provides the dominant estate ingress and egress over the servient estate using the "road" to Bass Lake, not only to the Barrier. As such, there is no ambiguity regarding the Easement's length or location. *See* ***Berg v. Ziel***, 2015 WI App 72, ¶¶7-8, 18-20, 365 Wis. 2d 131, 870 N.W.2d 666 (concluding the easement was not ambiguous, despite no legal description, where "an owner of either the dominant or servient estate had selected the existing access road as the easement's location" in a deed).

¶21 Similarly, there is no ambiguity regarding the Easement's width. As stated, both parties agree that the Easement begins at Carpenter Road where the roadway begins. The roadway runs to the Barrier. Thus, the width from Carpenter Road to the Barrier is the width of the roadway. Beyond the Barrier, as we will explain, vehicles are allowed for ingress and egress along the "road" to Bass Lake. Therefore, the width of the Easement's road must be as wide as the roadway, as determined by Roff, unless the roadway is not wide enough upon which a vehicle may drive.

B. *The Easement unambiguously grants Eilau the right to use any reasonable mode of transportation on the Easement, including motor vehicles.*

¶22 Eilau also argues that the Easement is ambiguous because it is silent as to vehicle use. Roff counters that the Easement unambiguously permits Eilau only "to drive on the established road, cross the lawn by foot, and leave their vehicles on the easement only long enough to load and unload them." Roff adds, however, that when Eilau "infrequently transport[s] large objects to or from the

island, [Eilau] may briefly drive all the way to the dock for the sole purpose of loading or unloading the object, so long as the conditions are dry so the lawn area is not disturbed or rutted."

¶23 We disagree with both Eilau and Roff. The Easement is not ambiguous merely due to its silence regarding the mode of transportation on any or all of it. Unless otherwise expressly limited by the text of the granting document, easements for ingress and egress allow for both vehicle and foot traffic. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10(d) (AM. L. INST. 2000). If the drafters of the Easement wanted to specify a permitted mode of transportation that differed from the general rule, they could have done so. Because the 1955 Deed is silent regarding the mode of transportation permitted, Eilau may use any reasonable[10] mode of transportation on the Easement, including vehicles.

¶24 This conclusion is consistent with our case law. For example, we have previously stated that an easement granting a dominant estate the right to "construct and maintain and use perpetually a roadway for the purpose of ingress and egress … to lands lying north of and adjacent to the following described real estate" created "no reasonable dispute that the purpose of [the] easement [was] to afford the easement holder a means of vehicular access" across the entire easement. *Bohm*, 393 Wis. 2d 757, ¶¶2, 17, 19 (emphasis omitted).

¶25 Like the easement in *Bohm*, the Easement here does not limit ingress and egress to a particular mode of transportation. Instead, it grants "ingress and egress to and from the above described Eagle Island over any road now situated on

---

[10] The dominant estate is granted "all rights that are incident or necessary to the *reasonable* and proper enjoyment of the easement." *Hunter v. Keys*, 229 Wis. 2d 710, 715, 600 N.W.2d 269 (Ct. App. 1999) (emphasis added).

lot Forty-nine (49)." To conclude, as Roff does, that the Easement does not provide for vehicular traffic beyond the Barrier requires us to consider evidence outside the four corners of the 1955 Deed. Our review of an unambiguous deed of easement is limited to the four corners of the granting document, *see* ***Konneker***, 326 Wis. 2d 268, ¶26, which, in this case, unambiguously provides for ingress and egress to Eagle Island.

¶26 Roff also contends that even if the Easement unambiguously allows for vehicular traffic beyond the Barrier, the use of vehicles places too great a burden on the servient estate. Our supreme court addressed a similar argument in ***Grygiel***. There, a dominant estate argued "that to determine whether certain conduct violates the express terms of an easement, under [***Millen v. Thomas***, 201 Wis. 2d 675, 685, 550 N.W.2d 134 (Ct. App. 1996), courts] are required to analyze the added burden, if any, imposed on the servient estate." ***Grygiel***, 328 Wis. 2d 436, ¶21. The court disagreed with the dominant estate and held that the "***Millen***'s burden analysis does not apply when the servient estate owner simply seeks a declaration that the terms of an express easement have been contravened." ***Grygiel***, 328 Wis. 2d 436, ¶25. The court concluded that

> requiring a showing of added burden in regard to proving that the terms of an express easement have been contravened encourages "difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate."
>
> [W]hen faced with an express easement, a court's focus should be on the language of the easement grant, and not on the presence or absence of added burden, in determining whether certain conduct contravenes the terms of the express easement. That analysis honors the expectations of the contracting parties and creates predictability in the respective parties' property rights.

12

*See id.*, ¶¶29, 30 (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.11 (AM. L. INST. 2000)).

¶27    Like the court in *Grygiel*, we need not address the added burden issue. We conclude that the Easement unambiguously allows for vehicular traffic beyond the Barrier to the boat dock because of the 1955 Deed's use of "ingress and egress" to permit access to Eagle Island.

### C. *Eilau has the right to turn vehicles around adjacent to the boat dock*.

¶28    The circuit court ruled that Eilau has the right to turn vehicles on the Easement, and that the Easement must be of sufficient width to do so. On appeal, Eilau argues that the Easement's silence regarding turning vehicles creates ambiguity. Eilau also echoes the court's ruling and contends that Eilau can create a "turnaround area" at the end of the Easement by Bass Lake. Eilau does not explain the extent of the "turnaround area." Roff's only argument against a turnaround area is that vehicular traffic is not permitted beyond the Barrier. To that end, Roff contends that the Birch Cottage parking area provides an adequate turnaround spot.

¶29    We agree with the circuit court and Eilau that the Easement permits turning vehicles around near the boat dock, but we disagree that the Easement's silence regarding turning vehicles around creates ambiguity. First, we conclude it would be unreasonable to interpret the Easement to not allow vehicles to turn around. In other words, it is unreasonable to allow a vehicle to be driven to Bass Lake, but then force that driver to back up to either the roadway or, alternatively, all the way to Carpenter Road. As such, the Easement is not ambiguous as to turning vehicles around. Our conclusion is compounded by the fact that the Easement provides for ingress and egress for the purpose of reaching a true island.

¶30 Thus, the question becomes whether creating a more distinct "turnaround area" is a use "for [a] purpose specified in the grant [that is] reasonably related to the [E]asement holder's right and do[es] not unreasonably burden the servient estate." *See Keys*, 229 Wis. 2d at 715. We conclude that creating a more distinct "turnaround area" using anything but the lawn would unreasonably burden the servient estate because Roff expressly has the right to move the Easement at any time. In other words, creating a paved turnaround area, or even a dirt turnaround area, would unreasonably burden the servient estate because it would create too large a burden for Roff to relocate the "road." That said, as we will explain later, the dominant estate is responsible for maintaining and repairing the Easement beyond the Barrier. Hence, to the extent that the turnaround is used in a fashion that damages Roff's property, it will be Eilau's responsibility to repair it.

### D. *Parking is not permitted on the Easement*.

¶31 Eilau next contends that the Easement's silence regarding parking creates ambiguity, while Roff counters that the Easement unambiguously does not allow parking. We conclude that the Easement unambiguously does not allow for parking because the drafters of the 1955 Deed did not expressly include parking.

¶32 The drafters included in the Easement the option to construct a boat dock and use it "for landing boats." If the drafters intended to include parking at any location on the Easement, they could have done so. Indeed, they knew the Easement was for access to and from an island, yet they did not include a vehicle parking provision. In the absence of such a provision, we are left with "ingress and egress," which again is defined as "[t]he right to use land *to enter and leave* another's property." *Ingress and egress easement*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added); *see also Keys*, 229 Wis. 2d at 713 (holding an

14

"easement for ingress and egress over and across" a road did not allow dominant estate to install utility poles); *cf. Atkinson v. Mentzel*, 211 Wis. 2d 628, 638-39, 566 N.W.2d 158 (Ct. App. 1997) (holding an easement was not limited to ingress or egress where it provided "access for all uses of said property other than retail sales"). Thus, the only reasonable interpretation of parking on the Easement is that parking is not allowed.

¶33     Eilau also contends that parking on the Easement is "reasonably necessary to enjoy the [E]asement." (Citation omitted.)  As outlined previously, the dominant estate is granted "all rights that are incident or necessary to the reasonable and proper enjoyment of the easement." *Keys*, 229 Wis. 2d at 715.  However, we do not need to reach Eilau's contention.  We conclude that in absence of a specific statement in the 1955 Deed, the drafters clearly did not intend to permit parking on the Easement.  We will therefore not second-guess the reasonableness of the drafters' contractual decisions. *See Grygiel*, 328 Wis. 2d 436, ¶¶16, 18, 30.

### E. *Eilau must maintain the Easement, but may not lay gravel on the Easement.*

¶34     We further disagree with Eilau that the Easement is ambiguous because it is silent as to maintenance, the right to place gravel, and make other general improvements.  Eilau fails to cite to any authority dictating that an easement's silence as to maintenance or improvements creates ambiguity.  "Absent an agreement to the contrary, the [dominant estate] must repair the easement." *Shanak*, 185 Wis. 2d at 584.  Because the 1955 Deed is silent regarding repairs and maintenance across Roff's property to Bass Lake, it is clear, as the circuit court

15

ruled, that Eilau must repair and maintain the Easement beyond the Barrier. *See id.*[11]

¶35 The circuit court, however, did not determine what repairs and maintenance Eilau was required to provide and neither party directly appeals the court's decision regarding maintenance or repair. That said, we will clarify the rights and duties of the parties in this regard because we conclude that Eilau is permitted under the Easement to travel via vehicle across Roff's property to Bass Lake and, as previously concluded, to turn vehicles around near the boat dock. *See State ex rel. S.M.D. v. F.D.L.*, 125 Wis. 2d 529, 532, 372 N.W.2d 921 (Ct. App. 1985) ("[A]n appellate court may, sua sponte, consider an issue not raised by the parties." (emphasis omitted)).

¶36 Repairs are necessary to the Easement to "prevent [the] unreasonable interference with the enjoyment of the servient estate, or [to] avoid liability of the servient-estate owner to third parties." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.13 (AM. L. INST. 2000). Here, Roff testified at trial that he uses Lot 49 largely for renting cabins, including Birch Cottage, to vacationers. Other testimony provided that the renters of the cabins on Lot 49 would access boats and Bass Lake via the lawn. Evidence admitted at trial detailed how Eilau's driving on the Easement beyond the Barrier damaged parts of the lawn. Specifically, Roff's trial counsel entered a series of photographs into evidence, which showed a number of "ruts" that were made in the lawn. Arvo Eilau testified that he "did [cause] some of the ruts" in the photographs, but he was not sure if he caused all of them. He

---

[11] It should be noted that in *Shanak v. City of Waupaca*, 185 Wis. 2d 568, 586, 518 N.W.2d 310 (Ct. App. 1994), we held that "[b]ecause the City has the duty to maintain and repair the [easement], it is liable to [the servient estate] for their damages resulting from the breach of that duty." There are no alleged damages on appeal in this case.

further testified that he "went back and tried to repair a little bit. It was the first time that we had driven down there so I didn't know much better." Based upon the Restatement, we conclude that any damage to the lawn caused by Eilau must be repaired to prevent unreasonable interference with the servient estate.

¶37 We also disagree that the Easement's silence regarding Eilau's right to place gravel on the Easement creates ambiguity. Applying general easement principles, we also conclude that the circuit court erred in allowing Eilau to place gravel on the Easement. Along with the duty to repair the Easement as needed, *see* ***Shanak***, 185 Wis. 2d at 584, the dominant estate also has the right to improve the Easement. *See* ***Keys***, 229 Wis. 2d at 715. In this case, the court granted Eilau the right to put gravel on the Easement as an improvement. Roff argues, inter alia, that placing gravel on the Easement would "effectively erase[] Roff's right to move the road[way]."[12] We agree with Roff and conclude that the court erred in this respect because improving the Easement with gravel would unreasonably burden the servient estate given the express terms of the Easement. *See* ***id.***

¶38 We acknowledge that absent express terms to the contrary, an easement for ingress and egress generally allows the dominant estate the ability to pave a road. *See* ***Keys***, 229 Wis. 2d at 716 ("The trial court therefore properly concluded that the grant of an easement for access and egress authorizes the easement holder to improve the roadway so as to facilitate access to his [or her] property, as long as the road improvements do not unreasonably burden the servient estate."); ***Knuth v. Vogels***, 265 Wis. 341, 345, 61 N.W.2d 301 (1953) (dominant

---

[12] For the first time in his reply brief, Roff argues that placing gravel on the Easement between the Barrier and Bass Lake would violate WIS. STAT. § 59.692 and WIS. ADMIN. CODE § NR 115.05(b) (Jan. 2017). Because Roff raised this issue for the first time in his reply brief, we will not consider it. *See* ***A.O. Smith Corp.***, 222 Wis. 2d at 492 (appellants cannot raise issues for the first time in a reply brief).

estate had right to replace cinder driveway with concrete driveway because doing so placed no added burden on the servient estate). Also absent contrary language, "[t]he 'longstanding default rule in Wisconsin [is] that a servient estate … cannot unilaterally relocate … an express easement.'" *See Berg*, 365 Wis. 2d 131, ¶14 (citation omitted). Both parties, however, agree that the Easement expressly provides the servient estate the right to move the Easement at any time. As such, placing gravel on the Easement would place an unreasonable burden on Roff.

¶39 To be sure, in the circuit court's oral decision, the court gave a hypothetical back-and-forth that could take place between the dominant and servient estates. Namely, if Eilau gravels the Easement and Roff decides to move the Easement afterward, then Eilau could gravel the new location, and so on. The result would be that Roff "will [eventually] have a front yard full of gravel because every time that he moves it, [Eilau is] going to want to maintain it and make it suitable for their access." Even if Eilau agreed to remove all of the gravel of an old road if Roff desired to move the road, this would result in additional wear to the land and, moreover, we question the efficacy of such a proposal as the gravel would be placed on a grass area. If Roff decides to move the Easement in the future, he must be able to do so. However, as the court's hypothetical shows, graveling the Easement would make that move virtually impossible.

¶40 Lastly, we are also not persuaded by Eilau's general contention that the Easement is ambiguous simply because it is for ingress and egress to a true island. Although uncommon, an easement to a true island does not, by itself, create ambiguity. The question remains whether the text of the 1955 Deed is susceptible to more than one reasonable interpretation. In this case, that answer is no.

¶41    We conclude that the Easement unambiguously allows for ingress and egress to Eagle Island from Carpenter Road to Bass Lake.  Because the 1955 Deed does not address the mode of transportation, the drafters of the 1955 Deed intended the dominant estate's owners to be permitted to travel the Easement by any reasonable mode of transportation, including by vehicle.  The Easement makes it clear that the drafting parties did not intend to permit parking on the Easement, but they did intend to allow the dominant estate to turn vehicles around near Bass Lake.  That said, creating a more distinct "turnaround area" would unreasonably burden the servient estate.  General easement principles provide that the dominant estate is responsible for maintenance and repairs from the Barrier to Bass Lake.  However, under the Easement here, the dominant estate cannot lay gravel on the Easement because doing so would place too unreasonable a burden on the servient estate should Roff attempt to move the road, as the Easement expressly permits.

¶42    No costs to either party.

*By the Court.*—Order affirmed in part and reversed in part.

Not recommended for publication in the official reports.